# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

CURTIS GUY,

                  Petitioner,

v.

JOHN HENLEY, *et al.*,

                 Respondents.

Case No.: 2:11-cv-01809-APG-NJK

**ORDER**

## I.    SUMMARY

This action is a petition for a writ of habeas corpus by Curtis Guy, an individual incarcerated at the Northern Nevada Correctional Center. Guy is represented by appointed counsel. The case is ready for resolution of Guy's claims on their merits. I deny Guy's petition.

## II.    BACKGROUND

Guy is serving two consecutive terms of life in prison with the possibility of parole after ten years on a conviction of first-degree murder with the use of a deadly weapon. The conviction was for a killing in North Las Vegas, Nevada, on April 7, 1990. On Guy's direct appeal, the Supreme Court of Nevada described the factual background of the case:

> On the evening of April 7, 1990, appellant Curtis Guy and his friend Larry Pendleton were cruising the streets of North Las Vegas in an automobile, intending to purchase cocaine. Appellant [Guy] was driving. He pulled the car into the parking lot of a convenience store, where they encountered Ceasor Evans, with whom they had not been previously acquainted. Evans told Pendleton and appellant that he knew where they could buy cocaine. Evans entered the automobile, and the three men set off to make the purchase. En route, Evans agreed to lead appellant and Pendleton to his source in return for a portion of the drugs they would purchase.
>
> At Evans' direction appellant drove to an undisclosed location where they purchased cocaine. As they drove away after making the purchase, Evans asked

appellant to pull to the side of the road so that Evans could urinate. Appellant stopped the car and Evans alighted from the rear door. The cocaine remained in the car, As Evans stood outside the car, appellant attempted to drive off so as to deprive Evans of his portion of the cocaine. Evans, however, grabbed onto the rear door frame on the passenger side as the car sped away. As appellant continued driving with Evans clinging to the door frame, Pendleton turned and shot Evans three times in the abdomen with a .25 caliber handgun. Evans fell from the car, and Pendleton and appellant drove off. Evans died later that evening.

Some two weeks later, after a high-speed automobile chase through the streets of North Las Vegas, appellant was charged with murder with the use of a deadly weapon. [Footnote: Pendleton was also indicted for Evans' murder. Pursuant to a plea bargain, Pendleton was sentenced to life without the possibility of parole.]

*Guy v. State*, 839 P.2d 578, 580 (Nev. 1992).[1]

Guy was initially charged by complaint. ECF No. 2-11 at 2–4, 8–11.[2] The case proceeded to a preliminary hearing on November 5, 1990, after which the justice of the peace dismissed the charges against Guy for lack of probable cause. ECF No. 42-1. The State then proceeded to a grand jury, and in an indictment filed on January 11, 1991 in Nevada's Eighth Judicial District Court (Clark County), Guy was charged with murder with use of a deadly weapon. ECF No. 42-4. The indictment alleged that Guy "aid[ed] and abet[ed] Larry Pendleton through counsel and encouragement by transporting Defendant and Larry Pendleton to and away from the crime scene and by being present before, during, and after the commission of the crime." *Id*. at 2–3. On January 18, 1991, the State filed a notice of intent to seek the death penalty. ECF Nos. 42-6, 42-7. Guy pled not guilty on January 23, 1991. ECF No. 42-8.

---

[1] A copy of the opinion is found in the record at ECF No. 47.

[2] Citations to items in the record in this case are to the location of the item on the docket in the court's electronic case file system (ECF). The page numbers cited refer to the ECF page numbering.

The guilt phase of Guy's trial began on March 4, 1991 and lasted three days. ECF Nos. 146-1, 146-2, 147-1, 147-2, 148-1, 148-2, 148-3.  At trial, an individual named Clifton Hays testified that he knew Ceasor Evans, and on the evening of April 7, 1990 he saw Evans, who appeared to be intoxicated, without money, and looking for drugs, get into a car with two people. ECF No. 147-1 at 15–19. The car was a four-door Oldsmobile Cutlass with tinted windows. *Id*. at 19-20.

The next witness, Ted Raymond, was a crime scene investigator in North Las Vegas. ECF No. 147-1 at 26. Officer Raymond responded to the scene of the homicide. *Id*. at 26–27. He testified about what he observed, and about items he found and impounded. *Id*. at 27–36. Those items included Evans's tennis shoes "showing scrape marks on those shoes." *Id* at 30, 32. Officer Raymond testified that he observed Evans to have three small caliber gunshot wounds. *Id*. at 34. Anthony Scott was a North Las Vegas police officer. ECF No. 147-1 at 43. He, too, responded to the scene. *Id*. at 44–45. Officer Scott also saw the three gunshot wounds. *Id*. at 46. And Officer Scott saw that Evans's right shoe "was all torn to bits as if he'd been dragged or something like that." *Id*. at 47.

Dr. Giles Sheldon Green performed the autopsy. ECF No. 147-1 at 57. Dr. Green found three small caliber gunshot wounds on Evans's left side, and he concluded those were the cause of death. *Id*. at 59–61. Dr. Green concluded that Evans's death was a homicide. *Id*. at 62. He removed three .25 caliber bullets from Evans's body. *Id*. at 63–64. Police officer Michael Judd testified that he observed the autopsy, and he testified about the chain of custody of the bullets. ECF No. 147-1 at 69–76.

An individual named Manuel Jefferson testified that in April 1990 he lived in an apartment with Edgar Thomas. ECF No. 147-1 at 78. Jefferson and Thomas were returning home

from a restaurant at approximately 9:15 p.m. on April 7, 1990 when they observed a four-door sedan with tinted windows, with its engine running and lights on, in front of the driveway of their apartment complex. *Id*. at 79–80. He observed an individual, later identified as Evans, standing outside the back passenger door. *Id*. at 80–82. Jefferson testified that Evans's "right hand was just like in his pants." *Id*. at 82. He then saw Evans getting back into the car and the car pulling out and going around a corner, and then he heard three gunshots. *Id*. at 82–83. Jefferson testified that he and Thomas then left and drove a few blocks, and then returned and saw Evans lying in the street. *Id*. at 83–85.

Edgar Thomas also testified. ECF No. 147-2 at 23. He also observed a man standing outside the rear passenger side of the vehicle. ECF No. 147-2 at 28–29. He identified Guy as the person driving the vehicle. *Id*. at 29–31. He testified that it looked like the people in the car were "fussing." *Id*. at 34. Then he saw the car take off, stop, and after a few seconds it "took off again [and] went through the stop sign," accelerated quickly with squealing tires, and made a right turn. *Id*. at 34–39. Thomas heard gunshots and saw muzzle flashes. *Id*. at 39–43. Thomas testified, like Jefferson, that they then drove a few blocks, returned, and found the individual that had seen standing beside the car lying in the street. *Id*. at 43–48.

The next witness was Tyrone White. ECF No. 147-2 at 69. White testified that he knew Larry Pendleton through Pendleton's brother Lanny, whom he knew as "Justin," and he testified that Guy was a friend of Larry Pendleton. ECF No. *Id*. at 70–71. White testified that about two weeks before the killing he saw Guy with a small chrome handgun with a brown handle. *Id*. at 73–74. White testified that he also saw Larry Pendleton and his brother with the gun, and that he himself handled it, but that Guy owned the gun. *Id*. at 75, 84.

Richard George Good was next to testify. ECF No. 147-2 at 85. Good was as a firearms examiner with the Las Vegas Metropolitan Police Department. *Id*. He examined the bullets recovered from Evans's body and compared them to bullets fired from the handgun obtained by the police. *Id*. at 90–97. Good concluded that the bullets recovered from Evans were fired by that gun. *Id*. at 97–98.

North Las Vegas detective Edward Brown was the next witness. ECF No. 147-2 at 99. He testified that on April 21, 1990, Guy's vehicle was located, and he went to its location. *Id*. at 101–02. Officers saw someone get in the car and drive away. *Id*. at 102–03. Detective Brown and other officers followed the car and eventually stopped it and arrested Guy, who was driving the car. *Id*. at 103–110.

Next to testify was Daniel Harry, also a North Las Vegas detective. ECF No. 147-2 at 111–12. Detective Harry spoke with Guy on May 1, 1990. *Id*. at 113. Guy provided Detective Harry information about the handgun, and the gun was recovered from Lanny Pendleton. *Id*. Detective Harry interviewed Guy and obtained a statement from him, and that statement was admitted as evidence. *Id*. at 115–17. Detective Harry testified that the statement was typed by a secretary as Guy was interviewed, that after it was typed Detective Harry reviewed it with Guy, that Guy had an opportunity to make changes if he wanted to, that Guy had an opportunity to add to the statement if he wanted to, and that Guy signed the statement. *Id*. at 116–17. This is Guy's statement in its entirety:

Q:      Mr. Guy, I'm investigating the shooting death of a man named Ceasar Evans that [occurred] on April 7, 1990 at approx. 9:30 PM at Oxford and Stanford Streets. This is the area to the rear of Jerry's Nugget. Would you relate to me any information that you have concerning this incident?

A:      We had ran into Cesar, we met him at the Shop n Stop up on Lake Mead. Me and Larry Pendleton. Our intent was to find some dope, some rocks and he said he knew where we could find some. So we rode up Lake Mead to the area

behind Jerry's Nugget and we bought the dope and as we were leaving he said that he wanted to step out of the car and take a piss. So I stopped the car for him and he got out and he was taking a piss and I started to drive off. He was holding onto the car as I was driving off, so Larry Pendleton shot him with a .25 automatic.

Q:      Would you describe this person that was shot by Larry?

A:      He was about 6 feet, 6'2, around 196-210 lbs., black male, I think he had on sweats and tennis shoes, and some kind of t-shirt.

Q:      Was he wearing any other type of clothing?

A:      No, no jackets or nothing.

Q:      What kind of car were you in when you picked him up?

A:      I think a 1980 Cutlass, color is brown and the vinyl top is brown and it has tinted windows. That's the car I got arrested in.

Q:      How many doors does this car have?

A:      Four.

Q:      Am I to understand then, that you were driving?

A:      Yes.

Q:      Where was Pendleton sitting?

A:      The front passenger seat.

Q:      Where was the gentleman that was shot sitting?

A:      He was sitting in the back seat, right behind Larry Pendleton.

Q:      Was there anybody else in the car?

A:      No.

Q:      [Am] I to understand then, that for taking you over to buy dope, he was to get some in exchange for that, the man that got shot, is that correct?

A:      Yes.

Q:      Did you know Larry Pendleton was going to shoot this man?

6

A:      No, I didn't.

Q:      So am I to understand that you were going to drive off so you wouldn't have to pay him off in dope when he got out to take a piss?

A:      Yes, that was my intention.

Q:      Did you know Larry had the gun on him, prior to the shooting?

A:      Yes.

Q:      You have seen this gun before, and handled it?

A:      Yes.

Q:      Would you describe this gun to me to the best of your ability?

A:      It's a .25 automatic. It's chrome and it has wooden handles, like light brown.

Q:      Do you know where the gun is now?

A:      I believe his brother has it. I think his name is Lanny, but I don't know the last name.

Q:      Would you describe Lanny for me?

A:      He's about 5'8, he's chubby built and he probably weighs about 210 lbs. He's 18, 19, 20.

Q:      How did Larry Pendleton shoot this individual that we're talking about?

A:      He turned around to the right and he fired I don't know how many shots, he shot out the back door when it was open.

Q:      And this individual was standing in the open doorway?

A:      No, he wasn't. The car was moving and he was holding onto the door frame when Larry shot him.

Q:      Was he attempting to get back into the car at that time?

A:      Yes.

Q:     From the time he was shot until the time he fell out of the car, how far had you traveled?

A:     We had stopped on Stanford facing North for Cesar to get out and take a piss. When he got out, and as he was pissing that's when I started to pull off, I turned right on Oxford and he was hanging on all the way around the corner, I'd say for about 40 feet and that's when Larry shot him.

Q:     Did you know this man by the name of Cesar?

A:     I didn't know his name. Only from our conversation from here.

Q:     Where did you guys go after that?

A:     I think I had an NA (Narcotics Anonymous) meeting and I do believe we went there for the meeting. It's up near Vegas World on St. Louis Street. Then after the meeting, we smoked the dope, we were still in the car and after that I believe we split up and went our separate ways.

Q:     Do you know where I can find Larry's brother, Lanny?

A:     I don't know the address but he stays on Carey and Donna on the apts. across from the elementary school, facing Carey.

Q:     Have you voluntarily given me this information?

A:     Yes.

Q:     Prior to this meeting between you and I, did we have a conversation regarding this?

A:     No, I think I told Metro police dept. about it, but not in detail.

Q:     Is there anything you want to add to this statement, regarding what happened?

A:     No.

Q:     Was there any other [person] present when this incident took place?

A:     No.

Q:     Did you notice any cars driving up to that location, in this same time period?

A:     No.

Q:      Is what you've told me the truth as to what actually happened?

A:      Yes, it is.

Q:      Are you willing to testify in a court of law, to what you've told me?

A:      Yes.

Q:      Is there anything else you want to add to this statement, at this time?

A:      No.

ECF No. 19-2 at 13–17 (as in original, except as indicated by brackets). Guy signed the statement twice on an introductory page, acknowledging that he was informed of his rights and understood them, that he could read and write the English language, and that no promises or threats were made and no pressure of any kind used against him.  *Id*. at 12. Guy also signed every page of the statement. *Id*. at 13–17.

On March 6, 1991, the jury returned its verdict, finding Guy guilty of first-degree murder with use of a deadly weapon. ECF No. 42-16. The penalty phase of the trial began on March 7,1991. The jury returned a sentence of death on March 8, 1991. ECF Nos. 42-18, 42-19. Guy filed a motion for a new trial. ECF Nos. 42-25, 43-8. That motion was denied. ECF No. 43-18. The judgment of conviction was filed on April 8, 1991. ECF Nos. 42-20, 42-21; *see also* ECF No. 43-16.

Guy appealed. *See* ECF Nos. 44-3, 44-4, 44-5, 44-6, 44-7, 44-8, 44-9, 44-10, 44-11, 44-12 (opening brief). The Supreme Court of Nevada affirmed the judgment of conviction on September 3, 1992. *Guy*, 839 P.2d 578 (Nev. 1992). The Supreme Court of Nevada denied rehearing on November 5, 1992. ECF No. 47-2 at 4. The Supreme Court of the United States denied certiorari on March 29, 1993. ECF No. 47-13.

On April 21, 1994, Guy filed a counseled petition for writ of habeas corpus in the state district court. ECF No. 47-17. He filed a supplemental habeas petition on September 16, 1996. ECF No. 48-15. And he filed an amended petition on July 23, 2002. ECF Nos. 49-14, 49-15. The state court conducted an evidentiary hearing and denied Guy's petition in a written order filed on September 7, 2007. ECF No. 51-2. Guy appealed. *See* ECF Nos. 52-9, 52-10, 52-11 (opening brief). The Supreme Court of Nevada affirmed on February 24, 2011. ECF No. 53-9. The Supreme Court of Nevada denied rehearing on May 17, 2011. ECF No. 53-12. The Supreme Court of the United States denied certiorari on January 13, 2012. ECF No. 53-16.

This court received a *pro se* petition for writ of habeas corpus from Guy, initiating this action, on November 9, 2011. ECF No. 1. The court appointed counsel for Guy. ECF No. 5. With counsel, Guy filed a first amended petition on May 16, 2012. ECF No. 17.

The respondents filed a motion to dismiss on January 15, 2013, asserting that some of Guy's claims were unexhausted in state court. ECF No. 41. On March 13, 2013, Guy responded by filing a motion requesting that the court stay this action while he completed litigation of a then-pending state habeas action. ECF No. 56. On July 22, 2013, I granted the motion for a stay and denied the motion to dismiss as moot. ECF No. 63.

Guy had filed a petition for writ of habeas corpus in the state district court on May 16, 2012, initiating a second state habeas action. ECF No. 91-5 at 26–318; *see also* ECF Nos. 91-6, 91-7. 91-8, 91-9, 91-10, 92-11, 91-12 (addendum). The state district court denied that petition as procedurally barred. ECF No. 91-13 at 184–228. Guy appealed. *See* ECF No. 91-14 at 275–461 (opening brief). On November 14, 2017, the Supreme Court of Nevada affirmed in part, reversed in part, and remanded. ECF No. 91-5 at 13–21. That court affirmed the denial of Guy's petition as it related to his conviction, reversed with respect to his death sentence, and remanded for the

district court to grant the petition in part and conduct a new sentencing. *See* ECF No. 91-5 at 13. On August 10, 2018, the state district court filed an amended judgment of conviction, sentencing Guy to two consecutive terms of life in prison with the possibility of parole after ten years. ECF No. 91-5 at 23–24.

I lifted the stay of this action on October 11, 2018, and Guy filed a second amended petition for writ of habeas corpus on March 18, 2019. ECF No. 90. Guy's second amended petition, his operative petition, includes the following claims (organized as in the petition):

1.      Guy's conviction is invalid under the federal constitution because insufficient evidence of his guilt was presented at trial.

        A.      The evidence of felony murder was constitutionally insufficient to sustain the conviction.

        B.      The Supreme Court of Nevada's decision affirming the conviction violated Guy's constitutional due process and jury trial rights by imposing a retroactive and unforeseeable construction of the Nevada robbery statute.

2.      Guy's federal constitutional rights were violated because of ineffective assistance of his trial counsel.

        (Subpart A does not set forth a separate claim.)

        B.      Trial counsel was ineffective for failing to investigate and present evidence of his brain damage.

        C.      Trial counsel was ineffective for failing to investigate and present evidence concerning Larry Pendleton.

        D.      Trial counsel was ineffective for failing to investigate and present evidence regarding Guy's drug use.

        E.      Trial counsel was ineffective throughout the pretrial phase of the trial court proceedings.

             1.      Trial counsel was ineffective for failing to file a motion to suppress Guy's confession.

2.      Trial counsel was ineffective for failing to challenge the sufficiency of the indictment.

3.      Trial counsel was ineffective for failing to negotiate or communicate plea deals.

F.    Trial counsel was ineffective throughout the guilt phase of his trial.

1.      Trial counsel was ineffective in conducting jury voir dire.

2.      Trial counsel was ineffective for failing to object to jury instructions on felony murder and conspiracy on the grounds that Guy was deprived of adequate notice.

3.      Trial counsel was ineffective for failing to request a limiting instruction informing the jury that Guy's intention with Pendleton to obtain drugs with the victim's assistance could not be considered as propensity evidence of his guilt of the murder offense, as the object of the relevant conspiracy offense, as propensity evidence of an intent to commit robbery, or as the object of the aiding and abetting offense.

4.      Trial counsel was ineffective with respect to the jury instructions regarding conspiracy.

5.      Trial counsel was ineffective with respect to the jury instructions regarding aiding and abetting.

6.      Trial counsel was ineffective for failing to request an instruction informing the jury that Pendleton was acquitted of all criminal charges against him in this case as part of a plea agreement involving another murder case against Pendleton that did not involve Guy.

7.      Trial counsel was ineffective for failing to object to the order of the jury instructions concerning mere presence and for failing to proffer a supplemental instruction regarding Guy's presence before and after the offense.

8.      Trial counsel was ineffective for failing to make a sufficiently thorough objection to the jury instructions concerning malice.

9.      Trial counsel was ineffective for failing to raise appropriate objections to the following jury instructions: the "general intent" instruction, the instruction on reasonable doubt, the instruction that the jury "determine the guilt or innocence of the defendant from the evidence in the case," the "equal and exact justice" instruction, and the "anti-sympathy" instruction.

10.     Trial counsel was ineffective for failing to raise an objection to the jury instruction on premeditation.

11.     Trial counsel was ineffective for failing to request jury instructions and verdict forms for lesser included offenses to which he conceded Guy's guilt in closing argument.

12.     Guy was prejudiced by the cumulative effect of improper jury instructions, the absence of appropriate jury instructions and verdict forms, and improper arguments by the prosecution.

13.     Trial counsel was ineffective for failing to cross examine Tyrone White with prior inconsistent statements.

14.     Trial counsel was ineffective for failing to object to the misconduct of the prosecution in misstating the standard for proof beyond a reasonable doubt, in misstating the law regarding felony murder, and in telling the jury that "I always wish we could wink at each other or something so I'd know if you were agreeing...."

3.      Guy's conviction is invalid under the federal constitution because the trial court erroneously instructed the jury in the guilt-phase of his trial.

        (Subpart A does not set forth a separate claim.)

        B.      The trial court gave the jury improper instructions on conspiracy.

        C.      The trial court gave the jury improper instructions on aiding and abetting.

        D.      The trial court improperly instructed the jury on premeditation.

        E.      The trial court improperly instructed the jury on malice.

        F.      The trial court improperly instructed the jury on mere presence.

G.     The trial court improperly instructed the jury on flight.

H.     The trial court failed to instruct the jury on lesser-included offenses.

I.     The trial court improperly instructed the jury on the burden of proof.

     1.     The trial court improperly instructed the jury on reasonable doubt.

     2.     The trial court gave the jury an improper "general intent" instruction.

     3.     The trial court gave the jury an improper "equal and exact justice" instruction.

     4.     The trial court erred in instructing the jury that they were to "determine the guilt or innocence of the defendant from the evidence in the case."

(Subpart J does not set forth a separate claim.)

K.     Guy was prejudiced by the cumulative effect of improper jury instructions given in the guilt-phase of his trial.

4.     Guy's conviction is invalid under the federal constitution because of prosecutorial misconduct.

A.     The prosecution failed to disclose material exculpatory and impeachment evidence and presented testimony knowing it to be false.

.     (Subpart 1 does not set forth a separate claim.)

     2.     The prosecution failed to disclose exculpatory and impeachment evidence regarding Tyrone White and had White testify falsely.

B.     The prosecution committed misconduct by disclosing Guy's confession the day the trial started.

C.     The prosecution committed misconduct in closing arguments.

D.     The prosecution committed misconduct by disregarding state charging law.

E.   Guy was prejudiced by the cumulative effect of prosecutorial misconduct.

5.   Guy's conviction is invalid under the federal constitution because of inadequate notice of the charges against him.

6.   Guy's conviction is invalid under the federal constitution because the trial court precluded Guy from presenting exculpatory testimony of Tyrone White regarding statements made by Pendleton.

7.   Guy's conviction is invalid under the federal constitution because the jury voir dire process at his trial was inadequate.

8.   Guy's federal constitutional rights were violated as a result of ineffective assistance of his appellate counsel, because his appellate counsel did not assert on appeal the claims contained in Claims 1, 3, 5, 7, 9 and 10.

9.   Guy's conviction is invalid under federal constitution because of potential and actual bias of the elected officials who adjudicated his trial, appeal, and state-court habeas corpus actions.

A.   Because Nevada judges are elected, they cannot provide a fair trial before a fair tribunal as the Due Process Clause of the federal constitution requires.

B.   Guy's conviction was upheld on appeal by a justice on the Supreme Court of Nevada who had a conflict.

10.   Guy's conviction is invalid under federal constitution because of the cumulative effect of the errors described in his claims.

ECF No. 90.

The respondents filed a motion to dismiss on November 4, 2019, arguing that Claims 1, 2A, 2B, 2D, 2E1, 2F13, 3A, 3B, 3C, 3D, 3F, 3H, 3I2, 3I3, 3K, 4, 5, 6, 7, 8, 9, and 10 of Guy's second amended petition are subject to dismissal as procedurally defaulted, and that part of Claim 9 is not cognizable in this federal habeas action. ECF No. 105. On January 15, 2021, determining that the issues raised in the motion to dismiss were interwoven with the question of

the merits of Guy's claims, I denied the motion to dismiss without prejudice to the respondents asserting the same defenses in their answer. ECF No. 130.

The respondents filed an answer on February 28, 2022. ECF No. 151. Following the Supreme Court's May 23, 2022 decision in *Shinn v. Ramirez*, 596 U.S. 366 (2022), I granted the respondents an opportunity to amend their answer, and they filed an amended answer on November 17, 2022. ECF No. 160. Guy filed a reply on May 31, 2023. ECF No. 164. The respondents filed a response to Guy's reply on October 2, 2023. ECF No. 171.

### III.    DISCUSSION

A.    Standard of Review - Claims Adjudicated in State Court

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), sets forth the standard of review generally applicable to claims asserted and resolved on their merits in state court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d)(1) "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and

1   nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v.*

2   *Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

3          A state court decision is an unreasonable application of clearly established Supreme

4   Court precedent within the meaning of 28 U.S.C. § 2254(d)(1) "if the state court identifies the

5   correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies

6   that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529

7   U.S. at 413). The "unreasonable application" clause requires the state court decision to be more

8   than incorrect or erroneous; the state court's application of clearly established law must be

9   objectively unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409). The analysis under § 2254(d)

10  looks to the law that was clearly established by precedent of the Supreme Court of the United

11  States at the time of the state court's decision. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

12         "A state court's determination that a claim lacks merit precludes federal habeas relief so

13  long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

14  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652,

15  664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion

16  was unreasonable." *Id*. at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563

17  U.S. 170, 181 (2011) (AEDPA standard is "a difficult to meet and highly deferential standard for

18  evaluating state-court rulings, which demands that state-court decisions be given the benefit of

19  the doubt" (internal quotation marks and citations omitted)).

20         B.     Exhaustion and Procedural Default

21         A federal court may not grant relief on a habeas corpus claim not exhausted in state court.

22  28 U.S.C. § 2254(b). The exhaustion doctrine is based on the policy of federal-state comity, and

23  is designed to give state courts the initial opportunity to correct alleged constitutional

17

deprivations. *See Picard v. Conner*, 404 U.S. 270, 275 (1971). To exhaust a claim, a petitioner must fairly present that claim to the highest available state court and must give that court the opportunity to address and resolve it. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam); *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).

The Supreme Court has recognized that under certain circumstances it may be appropriate for a federal court to anticipate a state-law procedural bar of an unexhausted claim and to treat such a claim as technically exhausted but subject to the procedural default doctrine. "An unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state court." *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)).

In light of the procedural history of this case and, in particular, the Supreme Court of Nevada's ruling in Guy's second state habeas actions, I find that any claims Guy has not yet presented in state court would be ruled procedurally barred if Guy were to return to state court again to attempt to exhaust those claims. *See* ECF No. 91-5 (procedural bars applied in Guy's second state habeas action). Therefore, the anticipatory default doctrine applies to any claims not yet presented in state court, and I consider those claims to be technically exhausted but subject to the procedural default doctrine. *See Dickens*, 740 F.3d at 1317,

Turning to the operation of the procedural default doctrine then, the Supreme Court has held that a state prisoner who fails to comply with the State's procedural requirements in presenting his claims is barred by the adequate and independent state ground doctrine from obtaining a writ of habeas corpus in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991) ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal

18

claims has deprived the state courts of an opportunity to address those claims in the first instance."). The procedural default may be excused only under limited circumstances:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Id*. at 750. To demonstrate cause for a procedural default, the petitioner must show that some objective factor external to the defense prevented compliance with the state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488, 492 (1986). The ineffective assistance of post-conviction counsel may serve as cause to overcome the procedural default of a claim of ineffective assistance of trial counsel. *Martinez v. Ryan*, 566 U.S. 1, 17 (2012). To overcome a procedural default under *Martinez*, a petitioner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id*. at 14; *see also Dickinson v. Shinn*, 2 F.4th 851, 858 (9th Cir. 2021). Regarding the question of prejudice, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)).

On the appeal in Guy's second state habeas action, the Supreme Court of Nevada ruled that his claims[3] are procedurally barred:

---

[3] I refer here only the Supreme Court of Nevada's treatment of Guy's guilt-phase claims; Guy's penalty-phase claims are no longer at issue.

1

2

3

4

5

> Guy filed the petition on May 16, 2012, more than 19 years after remittitur issued from his direct appeal. *Guy v. State*, 108 Nev. 770, 839 P.2d 578 (1992). His petition was therefore untimely. *See* NRS 34.726 (1). The petition was also successive because Guy had litigated a prior postconviction petition, *Guy v. State*, Docket No. 50350 (Order of Affirmance, February 24, 2011), and it constituted an abuse of the writ to the extent that it raised new claims. *See* NRS 34.810(l)(b), (2). Thus, Guy's petition was procedurally barred. *See* NRS 34.726(1); NRS 34.810(l)(b); 34.810(3).

6   ECF No. 91-5 at 13. Therefore, claims asserted in state court for the first time in Guy's second

7   state habeas action—claims not asserted by him on his direct appeal or in his first state habeas

8   action—are subject to application of the procedural default doctrine.

9   Guy argues that the state procedural rules that barred his claims in his second state habeas

10  action were not adequate to support application of the procedural default doctrine because the

11  Supreme Court of Nevada's application of those procedural rules was unclear. ECF No. 164 at

12  16–22. However, the Supreme Court of Nevada plainly ruled that Guy's entire second state

13  habeas petition was untimely: "Guy filed the petition on May 16, 2012, more than 19 years after

14  remittitur issued from his direct appeal. *Guy v. State*, 108 Nev. 770, 839 P.2d 578 (1992). His

15  petition was therefore untimely. *See* NRS 34.726 (1)." ECF No. 91-5 at 13.[4]

16  Guy argued in response to the respondents' motion to dismiss that the Supreme Court of

17  Nevada's application of NRS 34.726(1) (statute of limitations) was not independent of federal

18  law. *See* ECF No. 111 at 15–21. "[T]he independent state ground doctrine bars the federal courts

19  from reconsidering the issue in the context of habeas corpus review as long as the state court

20  explicitly invokes a state procedural bar rule as a separate basis for its decision." *McKenna v.*

21

22

23

---

[4] I consider the independence and adequacy of the Supreme Court of Nevada's application of only NRS 34.726, the statute of limitations bar, because the respondents have conceded that the Ninth Circuit Court of Appeals has ruled NRS 34.810, the successive petition bar, to be inadequate to support application of the procedural default doctrine in capital cases. *See* ECF No. 125 at 5.

*McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995). That is what the Supreme Court of Nevada did in this case. That court applied a state-law procedural bar, and only referred to federal law in determining that Guy could not overcome that state-law procedural bar. *See* ECF No. 91-5 at 14–18 (Supreme Court of Nevada's analysis following introductory statement that "Guy argues that the district court erred by denying his claims relating to the guilt phase as procedurally barred because he demonstrated good cause and prejudice to excuse the procedural bars and actual innocence"). The court's citation of federal law did not undermine the independence of the application of the state-law procedural bar such that I may overlook the procedural default.

Guy also argues that NRS 34.726 (statute of limitations) was inadequate to support application of the procedural default doctrine in this federal habeas action. *See* ECF No. 111 at 23–28. The Ninth Circuit has repeatedly addressed the adequacy of Nevada's statute of limitations (at NRS 34.726) and concluded that it is adequate. *See Loveland v. Hatcher*, 231 F.3d 640, 643–44 (9th Cir. 2000); *Moran v. McDaniel*, 80 F.3d 1261, 1269–70 (9th Cir. 1996) ("The Supreme Court of Nevada has consistently applied the state rule which prohibits review of the merits of an untimely claim unless the petitioner demonstrates cause."); *see also High v. Ignacio*, 408 F.3d 585, 590 (9th Cir. 2005); *Valerio v. Crawford*, 306 F.3d 742, 778 (9th Cir. 2002). Guy does not offer a sufficient reason to deviate from those rulings.

Guy also argues that his procedural default of certain of his claims should be overlooked because his counsel abandoned him in his first state habeas action. *See* ECF No. 111 at 46–55. I reject this argument as well. Guy's post-conviction counsel in his first state habeas action filed an extensive post-conviction petition on his behalf (ECF Nos. 49-14, 49-15) and participated in the evidentiary hearing (*see* ECF No. 103-1 at 65–68). Guy's post-conviction counsel did not abandon him.

C.     28 U.S.C. § 2254(e)(2), *Pinholster*, and *Ramirez*

Federal habeas review under 28 U.S.C. § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011) (concluding the district court erred in considering evidence introduced for first time in federal court); *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022) (citing *Pinholster*).

If a habeas petitioner:

has failed to develop the factual basis of a claim in State court proceedings, no evidentiary hearing will be held in federal court unless the petitioner shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)

In *Ramirez*, the Supreme Court of the United States reinforced that when reviewing a federal habeas petition, the federal court may not consider any facts beyond the factual record presented to the state post-conviction relief court, unless one of the exceptions of 28 U.S.C. § 2254(e)(2) applies. *Ramirez*, 596 U.S. at 382. The *Ramirez* Court also held that, with respect to procedurally defaulted claims not adjudicated on their merits in state court, the federal habeas court may not hold an evidentiary hearing or otherwise consider new evidence, either regarding

the question of cause and prejudice relative to a procedural default or regarding the merits of the claim, unless the requirements of 28 U.S.C. § 2254(e)(2) are met. *Id*. at 382–91.

Guy supports claims in his second amended petition in this case with new evidence—that is, evidence that he did not present in state court until he initiated his procedurally barred second state habeas action. Guy does not argue that any of his new evidence meets the standards imposed by 28 U.S.C. § 2254(e)(2). That new evidence is therefore inadmissible in this federal habeas action under 28 U.S.C. § 2254(e)(2) and the holdings in *Pinholster* and *Ramirez*.

Guy argues that this court can nevertheless consider his new evidence because he proffered it in state court in support of his second state habeas petition, which the state courts ruled was procedurally barred. This argument is foreclosed, however, by the Ninth Circuit's ruling in *McLaughlin v. Oliver*, 95 F.4th 1239 (9th Cir. 2024). In *McLaughlin*, the Court of Appeals read *Ramirez* to preclude a federal habeas court's consideration of evidence presented in state court only in a procedurally barred state post-conviction action.

> Here, the Nevada Supreme Court squarely held that McLaughlin's successive petition, with its new evidence, "was procedurally barred," and the court therefore declined to consider any of that evidence. McLaughlin's failure to present that evidence to the state courts "in compliance with state procedural rules" counts as a "fail[ure] to develop the factual basis of a claim in State court proceedings" under § 2254(e)(2), as construed in *Shinn* [*Ramirez*], 596 U.S. at 375–76, 142 S.Ct. 1718 (citation omitted).

*McLaughlin*, 95 F.4th at 1249.

In this order, then, I do not consider evidence proffered by Guy in state court only in his second state habeas action.

/ / / /

/ / / /

/ / / /

23

D.     Guy's Claims

1.     Claims 1A and 1B

In Claim 1A, Guy claims that his conviction is invalid under the federal constitution because insufficient evidence of his guilt was presented at trial. ECF No. 90 at 35–47.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A conviction is supported by insufficient evidence when no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A court applying *Jackson* must resolve any conflicting testimony in favor of the prosecution. *Id*. at 326.

Guy asserted this insufficiency-of-evidence claim on his direct appeal, and the Supreme Court of Nevada rejected it:

> To convict appellant under a felony murder theory, the state had to prove that Evans was murdered while being robbed by Pendleton and appellant. Appellant contends that the evidence does not support the jury's finding that he and Pendleton robbed Evans. We disagree.

> NRS 200.380(1) defines robbery as follows:

> [T]he unlawful taking of personal property from the person of another, or in his presence, against his will, by means of force or violence or fear of injury, immediate or future, to his person or property, or the person or property of a member of his family, or of anyone in his company at the time of the robbery. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking, in either of which cases the degree of force is immaterial. If used merely as a means of escape, it does not constitute robbery. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.

> Appellant first argues Evans had no legal or proprietary interest in the drugs because the agreement that entitled him to a portion of the drugs was void

24

and unenforceable. *See Gaston v. Drake*. 14 Nev. 175 (1879) (holding that a contract will not be enforced if it is against public policy or if it is for an illegal purpose). Appellant concludes that because Evans had no legal or proprietary interest in the drugs, there was no unlawful taking of personal property and therefore no robbery.

Appellant's argument fails. Admittedly, the agreement could not be enforced as a contract because of its illegal purpose; that does not mean, however, that the drugs could not be the subject of a robbery. The Supreme Court of California has declared that "by prohibiting possession of an item, the government does not license criminals to take it by force or stealth from other criminals." *People v. Dillon*, 34 Cal.3d 441, 194 Cal.Rptr. 390, 397 n.5, 668 P.2d 697, 704 n.5 (1983). And in *State v. Pokini*, 45 Haw. 295, 367 P.2d 499 (1961), the Supreme Court of Hawaii specifically held that a thief could be robbed of stolen goods. In our view, these cases correctly characterize robbery as a crime against *possession*, and we believe that the deal Evans made with his killers gave him a possessory interest in the cocaine.

Appellant next argues that the evidence fails to demonstrate that he and Pendleton took the drugs either from Evans' person or in Evans' presence. According to appellant, the drugs remained in the automobile while Evans urinated just outside the open rear passenger-side door. Thus, concludes appellant, when he and Pendleton sped off in the automobile with the drugs (the "taking"), the drugs were taken neither from Evans' person nor in Evans' presence.

This argument lacks merit also. We have adopted a broad definition of "presence" with respect to robbery, stating that "'[a] thing is in the presence of a person, in respect to robbery, which is so within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it.'" *Robertson v. Sheriff*, 93 Nev. 300, 302, 565 P.2d 647, 648 (1977) (quoting *Commonwealth v. Homer*, 235 Mass. 526, 127 N.E. 517, 520 (1920)). Applying this definition, we upheld a trial court's determination that money in a cash register was taken from a bartender's presence even though the bartender, who was in the bathroom when the robbers entered the bar, remained in the bathroom during the robbery out of fear. *Id.* 93 Nev. at 301–302, 565 P.2d at 647. We also agreed with the trial court's finding that the bartender was prevented by fear from retaining possession of the money in the register. *Id.* at 302, 565 P.2d at 648.

In light of *Robertson*, we conclude that the drugs were taken from Evans' presence. Under the deal to purchase the drugs, Evans possessed a portion of the drugs he purchased. Even while Evans urinated outside the car, the drugs were within his view. Moreover, Evans could have retained possession of his portion if Pendleton had not shot him.

25

1
2
3

      Finally, appellant argues that Pendleton's shooting of Evans was force "used merely as a means of escape." NRS 200.380(1). We disagree. The evidence indicates that the firearm was used to overcome Evans' resistance to the taking of the drugs; a use of force that satisfies the statutory definition of robbery. *See* NRS 200.380(1).

4
5
6
7
8
9

      Where there is substantial evidence to support the jury's verdict, it will not be disturbed on appeal. *Bolden v. State*, 97 Nev. 71, 624 P.2d 20 (1981). In determining whether a jury verdict is supported by substantial evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Koza v. State*, 100 Nev. 245, 250, 681 P.2d 44, 47 (1984) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)) (emphasis in original). We hold that substantial evidence supports the jury's finding that appellant and Pendleton robbed Evans.

10  *Guy*, 839 P.2d at 581–82 (emphasis in original).

11        The Supreme Court of Nevada determined that the evidence supported a finding that Guy

12  and Pendleton, acting jointly, robbed Evans.[5] Apparently, then, the court determined that the

13  evidence was sufficient to show beyond a reasonable doubt that Guy aided and abetted Pendleton

14  in robbing Evans, rendering Guy legally responsible for the murder under the felony-murder

15  doctrine. That ruling was reasonable.

16        There was no real dispute at trial about the actions of Guy and Pendleton that resulted in

17  Evans's death: Guy accelerated the car with Evans holding on to the door frame, intending to

18  drive off so that he and Pendleton would not have to give Evans any of the drugs.  At the same

19  time, Pendleton shot Evans, preventing him from getting back into the car, also to deprive Evans

20

21

---

22
23

[5] *See*, *e.g.*, *Guy*, 839 P.2d at 581 ("Appellant [Guy] contends that the evidence does not support the jury's finding that he and Pendleton robbed Evans. We disagree."); *id*, 839 P.2d at 581 ("Appellant next argues that the evidence fails to demonstrate that he and Pendleton took the drugs either from Evans' person or in Evans' presence."); *id*., 839 P.2d at 582 ("We hold that substantial evidence supports the jury's finding that appellant and Pendleton robbed Evans.").

of his share of the drugs. *See* summary of evidence, *supra*, pp. 3–9. And Guy told the police his

intention in accelerating the car:

> Q: So am I to understand that you were going to drive off so you wouldn't
> have to pay him off in dope when he got out to take a piss?

> A: Yes, that was my intention.

ECF No. 19-2 at 14. There was, therefore, sufficient evidence that Guy aided and abetted

Pendleton in robbing Evans, supporting application of the felony-murder doctrine and rendering

Guy guilty of first-degree murder.

Guy points to footnote 4 in the Supreme Court of Nevada's opinion on the appeal in

Guy's second state habeas action, where the court stated:

> The State offered several theories to support a first-degree murder
> conviction even though Guy did not personally shoot the victim: aiding and
> abetting, conspiracy, and felony murder. The jury returned a general verdict that
> did not specify which theory it had relied upon. We have previously recognized
> that sufficient evidence supported the theory of felony murder. *Guy v. State*, 108
> Nev. 770, 774–76, 839 P.3d 578, 581–82 (1992). The other theories were not
> supported by sufficient evidence.[6]

ECF No. 91-5 at 18 n.4. That footnote is not inconsistent with the court's ruling on Guy's direct

appeal that there was sufficient evidence to support Guy's first-degree murder conviction. On

direct appeal, the Supreme Court of Nevada found the evidence sufficient to support Guy's

conviction under the felony-murder doctrine; that is, the court found that the evidence was

sufficient to show that the underlying felony of robbery was committed by Guy and Pendleton

acting jointly. On the appeal in Guy's second state habeas action, the Supreme Court of

Nevada's comment in footnote 4 appears to have meant that there was no evidence supporting a

---

[6] This was in the context of the court's consideration whether Guy was a "major participant" in
the robbery such that he could be eligible for a death sentence under *Enmund v. Florida*, 458
U.S. 782 (1982), if guilty of murder on a felony-murder theory. *See* ECF No. 91-5 at 18–21.

finding that Guy aided and abetted *murder* or that he and Pendleton conspired *to murder* Evans.

But in footnote 4, the court did not disavow its previous ruling that the evidence showed that

Guy and Pendleton, acting jointly—that is, with Guy aiding and abetting Evans—robbed Evans,

that Evans was killed during the robbery, and that Guy was therefore guilty of felony murder.

Indeed, in the opinion on the appeal in Guy's second state habeas action, in the same discussion,

the court stated: "Guy's conduct made him guilty of felony murder…." *Id*. at 19–20.

Guy also argues that there was not a robbery because, in his view, Evans never possessed

the drugs, and because any agreement for him to receive a portion of the drugs was illegal and

unenforceable. But these issues turn purely on the construction of Nevada statutes, and the

Supreme Court of Nevada's rulings on such issues are authoritative and not subject to review in

this federal habeas corpus action. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam)

("We have repeatedly held that a state court's interpretation of state law, including one

announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas

corpus."); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Bonin v. Calderon*, 59 F.3d 815, 841

(9th Cir. 1995).

I deny Guy habeas corpus relief on Claim 1A. The Supreme Court of Nevada's ruling on

that claim was not contrary to, or an unreasonable application of, clearly established federal law

as determined by the Supreme Court of the United States, and it was not based on an

unreasonable determination of the facts in light of the evidence presented.

In Part B of Claim 1, Guy asserts that in finding that there was sufficient evidence to

support Guy's conviction, the Supreme Court of Nevada violated his federal constitutional rights

by imposing a retroactive and unforeseeable construction of the Nevada robbery statute. Guy did

not assert this argument in state court until his second state habeas action, in which the Supreme

Court of Nevada ruled it procedurally barred. Claim 1B is, therefore, procedurally defaulted. *See* discussion *supra,* pp. 17–22. Guy makes no showing to overcome the procedural default of this claim.

Guy argues that he can overcome the procedural defaults of his claims because denying them as procedurally defaulted would result in a fundamental miscarriage of justice because there was insufficient evidence to support his conviction. But that argument fails with respect to Claim 1B and with respect to all his other procedurally defaulted claims for the reasons explained in the discussion of Claim 1A. *See* discussion *supra*, pp. 24–29. I deny Claim 1B as procedurally defaulted.

### 2.   Claim 2A – Standard for Claims of Ineffective Assistance of Counsel

In the several subclaims under Claim 2 Guy asserts that his federal constitutional rights were violated because of ineffective assistance of his trial counsel. ECF No. 90 at 47–119.

Subsection 2A (ECF No. 90 at 51–58) does not set forth a separate claim for habeas corpus relief, but rather appears to function as an introduction to his specific claims of ineffective assistance of counsel. Guy argues there that his trial counsel, Robert Gower, was not competent to handle a capital murder case and should never have been appointed to represent him. That, though, is not the test of whether a federal habeas petitioner is entitled to habeas corpus relief on a claim of ineffective assistance of counsel.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test for claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland*, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id*. at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. In analyzing a claim of ineffective assistance of counsel under *Strickland*, a court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy one element of the claim, the court need not consider the other. *See Strickland*, 466 U.S. at 697.

Where a state court previously adjudicated a claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104–05 ("The standards created by *Strickland* and § 2254(d) are both highly deferential … and when the two apply in tandem, review is 'doubly' so." (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Cheney v. Washington*, 614 F.3d 987, 994–95 (2010) (double deference required with respect to state court adjudications of *Strickland* claims).

### 3.    Claims 2B, 2D, 2E1 and 4B

In Claim 2B, Guy claims that his trial counsel was ineffective for failing to investigate and present evidence of his brain damage. ECF No. 90 at 58–64. In Claim 2D, Guy claims that his trial counsel was ineffective for failing to investigate and present evidence regarding Guy's drug use. *Id*. at 71–72. In Claim 2E1, Guy asserts that his trial counsel was ineffective for failing to file a motion to suppress his confession. *Id*. at 72–79. In Claim 4B, Guy asserts that the prosecution committed misconduct by disclosing his confession the day the trial started. *Id.* at 175–76. All four of these claims ultimately concern Guy's confession. All four claims are procedurally defaulted. *See* discussion *supra*, pp. 17–22.

Guy argues that he can overcome the procedural default of the three claims of ineffective assistance of his trial counsel, under *Martinez*, by showing that his counsel in his first state habeas action were ineffective for not asserting them. But the evidence that Guy primarily relies upon to make this showing is barred from consideration by *Pinholster* and *Ramirez*. *See* discussion *supra*, pp. 22–24. Most importantly with respect to these claims, Guy did not present in state court, in a context in which they could be considered relative to these claims, the statements of Dr. Jurasky (ECF No. 19-1 at 27-28), Dr. Sullivan (ECF No. 18-5 at 30-47), and Dr. Lundberg-Love (ECF No. 18-5 at 49-58). Because the evidence Guy relies upon to support these claims is inadmissible under *Pinholster* and *Ramirez*, Guy fails to show that those claims are substantial within the meaning of *Martinez*. I deny Claims 2B, 2D and 2E1 as procedurally defaulted.

Guy makes no showing to overcome the procedural default of Claim 4B. Claim 4B is not a claim of ineffective assistance of trial counsel, so *Martinez* does not apply. I deny Claim 4B as procedurally defaulted as well.

### 4.     Claims 2C and 2F6

In Claim 2C, Guy claims that his trial counsel was ineffective for failing to investigate and present evidence concerning Larry Pendleton. ECF No. 90 at 64–71. Guy alleges that Pendleton entered a plea deal in another case (the Britton Cook murder case), pleaded guilty to the murder charge in that case, and accepted a sentence of life without the possibility of parole in exchange for dismissal of the charges against him in this case. *Id*. at 66. Guy asserts that reasonably competent trial counsel would have been aware of the dismissal of the charges against Pendleton and would have presented evidence of such in the guilt phase of his trial. *Id*. at 66–69. Guy also claims that his trial counsel was ineffective for not effectively litigating the

1 prosecution's objection on hearsay grounds to proposed testimony of Tyrone White that

2 Pendleton admitted to shooting Evans. *Id*. at 69–71.

3       The parties agree that Claim 2C was adjudicated on its merits in state court and is subject

4 to the deferential AEDPA standard. *See* ECF No. 160 at 36–38; ECF No. 164 at 22–23, 38–42.

5 The Supreme Court of Nevada affirmed the denial of relief on the claim:

> 6       This claim is purely speculative. Guy presented no evidence at the
> evidentiary hearing that trial counsel was unaware of what had happened in
> 7       Pendleton's case or that Pendleton would have been willing to testify in his
> behalf. Therefore, the district court did not err in denying this claim.
>
> 8

9 ECF No. 53-9 at 25. The Supreme Court of Nevada's ruling was reasonable. As that court

10 pointed out, there is no showing that Pendleton would have testified in a manner beneficial to

11 Guy, and there is no showing how else Guy might have shown the dismissal of the charges

12 against Pendleton. Nor is there a showing of a reasonable probability of a better outcome in the

13 guilt phase of Guy's trial had the jury known of the negotiated settlement of the charges against

14 Pendleton; because the charges against Pendleton were dismissed in conjunction with his plea

15 deal in the other case, a reasonable juror could have found that the dismissal of the charges

16 against Pendleton had no bearing at all on the question of Guy's guilt or innocence in this case.

17       Regarding counsel's alleged failure to overcome the prosecution's hearsay objections to

18 testimony that Pendleton admitted shooting Evans, it was undisputed at trial that Pendleton was

19 the shooter; that testimony would have been cumulative and would have had no impact on the

20 outcome of Guy's trial. *See* discussion *supra* at 3–9.

21       The Supreme Court of Nevada's denial of relief on this claim was not contrary to, or an

22 unreasonable application of, *Strickland* or any other clearly established federal law as determined

23

by the Supreme Court, and it was not based on an unreasonable determination of the facts in light

of the evidence presented. I deny relief on Claim 2C.

In Claim 2F6, Guy asserts that his trial counsel was ineffective for failing to request an

instruction informing the jury that Pendleton was acquitted of all criminal charges against him in

this case as part of a plea agreement in the unrelated case. ECF No. 90 at 104–06. Guy asserted

this claim in state court, and the Supreme Court of Nevada affirmed denial of relief on the claim:

> Guy claimed that trial counsel was ineffective for failing to request an
> instruction pursuant to *State v. Cushing*, [*et al.*], 61 Nev. 132, 147, 120 P.2d 208,
> 215 (1941), informing the jury that his codefendant, Pendleton, had been
> acquitted of all criminal charges arising out of the case. [Footnote: Pendleton's
> charges in this case were dropped as part of a plea bargain in which he pleaded
> guilty to murder in another case and accepted a sentence of two consecutive terms
> of life without parole.] We conclude that *Cushing* is distinguishable on its facts
> and that the suggested instruction was unnecessary and likely to lead to confusion.
> Accordingly, trial counsel was not unreasonable for failing to request this
> instruction, and, even if [he had] made the request, there was no reasonable
> likelihood that the instruction would have been given to the jury. Therefore, the
> district court did not err in denying this claim.

ECF No. 53-9 at 20–21. This ruling was not contrary to, or an unreasonable application of

clearly established federal law as determined by the Supreme Court, and it was not based on an

unreasonable determination of the facts in light of the evidence.

The premise of Claim 2F6 is misleading. Guy points to no evidence suggesting that the

dismissal of the charges against Pendleton in this case was based on any weakness of the

prosecution's case against him. Rather, the charges against Pendleton were dismissed as part of a

plea agreement resolving both this case and another murder case. Guy does not explain how the

dismissal of the charges against Pendleton was relevant to the question of his guilt or innocence.

Guy points to the Supreme Court of Nevada's 1941 decision in *Cushing*—and only that

decision—as authority his trial counsel should have cited in requesting the suggested instruction.

But *Cushing* does not mandate such an instruction in a case like this. In *Cushing*, such a defense-friendly instruction was given. On the defendants' appeal, in ruling on a different but related issue, the Supreme Court of Nevada commented that the instruction was properly given. *Cushing*, 120 P.2d at 216. However, in *Cushing* the discharged defendant testified at trial after the charges against her were dismissed. Thus, the dismissal was relevant to the question of her credibility. In the present case, Pendleton did not testify.

Most importantly though, the Supreme Court of Nevada's reading of *Cushing* on Guy's appeal, to not mandate the instruction suggested by Guy, was a ruling on a matter of state law by the state supreme court. As such, it is beyond the purview of this federal habeas action. *See Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 67–68; *Bonin*, 59 F.3d at 841. Guy makes no argument that his trial counsel was ineffective for not citing any federal authority in requesting the suggested instruction. I deny relief on Claim 2F6.

### 5.  Claims 2E2 and 4D

In Claim 2E2, Guy asserts that his trial counsel was ineffective for failing to challenge the sufficiency of the indictment. ECF No. 90 at 79–83. Guy points out that after a preliminary hearing the justice court dismissed the charges against Guy, but then the State obtained an indictment from the grand jury. *Id*. at 79. Guy claims that his trial counsel should have challenged the indictment on grounds of insufficient evidence, collateral estoppel, and other state-law grounds. *Id*. at 79–82.

The Supreme Court of Nevada considered this claim and denied relief on its merits:

> Guy claims that the district court erred by denying claims that trial counsel was ineffective for failing to file a pretrial writ of habeas corpus challenging the indictment on the grounds that it (1) was not supported by sufficient evidence, (2) was barred by collateral estoppel, (3) failed to state a homicide defense, (4) included improper surplusage, and (5) was untimely. [Footnote: Other than citing NRS 173.556(1), Guy wholly failed to explain his timeliness argument, and

therefore the district court did not err in denying it.] The district court properly denied these claims because these challenges to the indictment lack merit, as explained below, and therefore Guy failed to demonstrate that trial counsel's performance was unreasonable or that he was prejudiced.

Guy claims that the indictment was invalid because there was insufficient evidence to support it. However, "[t]he efficacy of an indictment can be sustained upon 'the slightest sufficient legal evidence.'" *Echavarria v. State*, 108 Nev. 734, 745, 839 P.2d 589, 596 (1992) (quoting *Franklin v. State*, 89 Nev. 382, 387, 513 P.2d 1252, 1256 (1973)). The fact that the original complaint was dismissed in justice court is not proof that the evidence was insufficient to support the subsequent indictment. NRS 178.562(2) specifically authorizes a prosecutor to seek an indictment after the dismissal of a prior complaint. Guy's claim that there was no probable cause to indict him is further belied by the fact that a jury found him guilty beyond a reasonable doubt. *See United States v. Mechanik*, 475 U.S. 66, 70 (1986) (any error in grand jury proceedings was harmless where defendants were found guilty beyond a reasonable doubt at trial); *Lisle v. State*, 114 Nev. 221, 224–25, 954 P.2d 744, 746–47 (1998) (citing *Mechanik*).

Guy also claims that the indictment was barred by collateral estoppel. However, NRS 178.562(2) specifically authorizes the State to seek an indictment following the dismissal of a criminal complaint at a preliminary hearing, and this court has previously concluded that the statute does not "offend[] any constitutional proscription." *State of Nevada v. District Court*, 114 Nev. 739, 743–44 n.4, 964 P.2d 48, 51 n.4 (1998).

Guy next contends that the indictment failed to state a homicide offense because it was brought under the mayhem statute. This claim is belied by the record. Prior to trial, defense counsel informed the State and the district court that the indictment referred to NRS 200.300 rather that NRS 200.030, and the district court corrected the transposition by interlineation.

Finally, Guy claims that the indictment was subject to challenge on the basis of surplusage. NRS 173.085 permits a district court to strike surplusage from an indictment upon the motion of the defendant. However, there is no authority requiring the dismissal of an entire indictment based on redundant language, and NRS 173.095(1) permits the State to amend an indictment at any time prior to the jury's verdict. Accordingly, a challenge to the language of the indictment was not reasonably likely to change the results of trial. [Footnote: Guy also claims that trial counsel failed to challenge the indictment because he did not contact Guy's previous attorney and was not aware that a criminal complaint had been dismissed after a preliminary hearing. Guy fails to identify any support for this assertion in the record. Even if Guy's assertion is true, he failed to demonstrate prejudice.]

ECF No. 53-9 at 8–10.

The Supreme Court of Nevada's conclusion that there was no valid ground to challenge the indictment was based on that court's construction of state law. The Supreme Court of Nevada's construction of Nevada state law is authoritative and is not reviewable in this federal habeas corpus action. *See Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 67–68; *Bonin*, 59 F.3d at 841. There is, therefore, no showing that Guy's trial counsel performed unreasonably, or that Guy was prejudiced. The Supreme Court of Nevada's ruling on this claim was not an unreasonable application of *Strickland* or any other clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence. I deny relief on Claim 2E2.

Claim 4D is a related substantive claim. In Claim 4D, Guy asserts that the prosecution committed misconduct by disregarding state charging law. ECF No. 90 at 180–85. This claim is procedurally defaulted. *See* discussion *supra*, pp. 17–22. Guy makes no showing to overcome the procedural default. I deny Claim 4D as procedurally defaulted.

### 6. Claim 2E3

In Claim 2E3, Guy asserts that his trial counsel was ineffective for failing to negotiate or communicate plea deals. ECF No. 90 at 83–84.

Guy asserted such a claim in state court, and the Supreme Court of Nevada affirmed denial of relief on the claim:

> Guy claims that the district court erred by denying a claim that trial counsel was ineffective for failing to communicate with him about plea offers from the State. However, the record indicates that both Guy's initial attorney and his trial attorney discussed various plea offers with Guy, which he consistently rejected. Because Guy's claim was belied by the record, the district court did not err in denying it. *See Hargrove v. State*, 100 Nev. 498, 503[], 686 P.2d 222, 225 (1984).

ECF No. 53-9 at 11.

Guy makes this claim in a conclusory manner. He alleges no specific facts in support of the claim. He does not point to any plea offer that counsel failed to communicate to Guy. As for the State's willingness to enter into a plea agreement with Guy, he argues:

> Moreover, surely, if the district attorney's office was willing to entertain a plea agreement with Pendleton, it would have also been willing to entertain the same or a similar offer with Guy: it was Pendleton, after all, who had shot Evans, not Guy.

ECF No. 164 at 43–44. But the State did offer Guy a plea deal much like the deal Pendleton agreed to. The offer was that if Guy pleaded guilty in two other cases and agreed to two consecutive 50-year prison sentences in those cases, the State would dismiss the charges against him in this case. *See* ECF No. 42-10 at 3–4. Guy rejected that offer. *See id*.

In short, this claim is plainly without merit. There is no showing that Guy's counsel performed unreasonably or that Guy was prejudiced. The Supreme Court of Nevada's ruling on this claim was not an unreasonable application of *Strickland* or any other clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence. I deny relief on Claim 2E3.

### 7.    Claims 2F1 and 7

In Claim 2F1, Guy asserts that his trial counsel was ineffective in conducting jury voir dire. ECF No. 90 at 84–87. Guy claims that his trial counsel "failed to question potential jurors regarding their ability to be fair and impartial; failed to remove for cause jurors who personally knew the prosecutors or witnesses; and failed to intelligently exercise his peremptory challenges." *Id*. at 84. Specifically, Guy claims that his trial counsel was ineffective in voir dire of the following potential jurors:

- Juror Glass, Prospective Juror No. 91 (voir dire at ECF No. 146-2 at 111–14), husband was a corrections officer at the Clark County Detention Center, was seated as a juror;

- Juror Glenn, Prospective Juror No. 74 (voir dire at ECF No. 146-2 39–49), worked as a legal secretary for two attorneys who were former law clerks of the trial judge, was acquainted with the trial judge's son, was seated as a juror;

- Juror Shelly, Prospective Juror No. 77 (voir dire at ECF No. 146-1 at 24–25 and ECF No. 146-2 at 68–77 and 89), a nurse, through her work knew doctor who performed autopsy, was seated as a juror and served as foreperson;

- Juror Stephens, Prospective Juror No. 97 (voir dire at ECF No. 146-1 at 23, and ECF No. 146-2 at 129–37), was a witness in an unrelated case and had had conversations with one of Guy's prosecutors regarding that other case, was seated as a juror;

- Juror Ward, Prospective Juror No. 84 (voir dire at ECF No. 146-2 at 14–22), had been arrested on a charge of unauthorized communications with a prisoner, was seated as a juror.

Guy asserted this claim in state court in his first state habeas action, and the Supreme Court of Nevada affirmed the denial of relief on the claim:

> Guy claims that the district court erred by denying a claim that trial counsel was ineffective during voir dire. [Footnote omitted.] The district court did not err because Guy's claims were without merit.

> *   *   *

> Guy claimed that trial counsel was ineffective for failing to more strenuously question and challenge three jurors: the dean of students at Eldorado High School who had met the prosecutor in connection with the prosecution of a student at the school, a legal secretary working for one of the trial judge's former law clerks, and a trauma nurse who had met State's witness Dr. Giles Sheldon Green in connection with his work in the Clark County Coroner's Office. On examination, these jurors testified that their deliberations would not be influenced by their acquaintances and that they would consider the testimony objectively. Therefore, Guy failed to demonstrate that there was any reason to challenge these jurors for cause or that, had counsel questioned them more strenuously, the result of trial would have been different.

> *   *   *

1       Finally, Guy claimed that trial counsel was ineffective for waiving five of
2  his eight peremptory challenges when there were jurors who knew the prosecutors
3  and witnesses and "were heavily in favor of imposing death." [Footnote: The
   State waived seven of its eight peremptory challenges.] Guy failed to demonstrate
   that the unchallenged jurors were unfavorably disposed to him, *see Mattheson v.*
4  *King*, 751 F.2d 1432, 1438–39 (5th Cir. 1985), or that counsel's failure to exercise
   peremptory challenges prejudiced him, *see U.S. v. Taylor*, 832 F.2d 1187, 1195
5  (10th Cir. 1987). And he failed to present evidence to support his assertion that
   the jurors "were heavily in favor of imposing death." Therefore, the district court
   did not err in denying this claim.

6

7  ECF No. 53-9 at 11–13.

8       Regarding Juror Ward, who was not discussed by the Supreme Court of Nevada in its

9  ruling, Guy has filed a declaration of Ward, signed in May 2012, in which Ward states:

10  I was arrested in December of 1990 on New Year's eve for throwing a pack of
    cigarettes over the walk (sic) to a friend that was locked up in the city jail on
11  Stewart and Mohave. I was detained for a couple of hours until someone bailed
    me out. I later paid the fine, and no court appearances were ever scheduled. I did
12  not have any discussions with prosecutors in connection with my case or it's (sic)
    resolution. I have no idea why there was a notation in my file the day that I was
13  seated on the jury. As far as I recall, I thought that my case was resolved when I
    paid the fine, and I believe that I paid the fine before I was seated on the jury.

14

15  ECF No. 19-5 at 100. Ward's declaration was not presented in state court in Guy's first state

16  habeas action in a manner allowing the state courts to consider it in connection with this claim,

17  so the declaration is inadmissible here under 28 U.S.C. § 2254(e)(2) and the holdings in

18  *Pinholster* and *Ramirez*. Moreover—whether or not Ward's declaration is considered—there is

19  no showing that Guy's trial counsel performed unreasonably in not challenging Ward, either for

20  cause or with a peremptory challenge, and there is no showing that Guy was prejudiced.

21       The Supreme Court of Nevada's ruling on this claim was not an unreasonable application

22  of *Strickland* or any other clearly established federal law, nor was it an unreasonable

23  determination of the facts in light of the evidence. A reasonable jurist could certainly argue that

Guy's trial counsel did not perform ineffectively, and that there is no reasonable probability that the guilt phase of Guy's trial would have turned out differently if counsel had conducted jury voir dire differently or had asserted a challenge for cause or a peremptory challenge with respect to any of the jurors in question. I deny relief on Claim 2F1.

Claim 7 is a substantive claim—as opposed to a claim of ineffective assistance of counsel—related to Claim 2F1. In Claim 7, Guy asserts that his conviction is invalid under the federal constitution because the jury voir dire process was inadequate. ECF No. 90 at 191–200. Claim 7 is procedurally defaulted. *See* ECF No. 53-9 at 11, footnote 4 (Supreme Court of Nevada stated, on the appeal in Guy's first state habeas action: "These claims could have been raised on direct appeal and are procedurally barred."); *see also* discussion *supra*, pp. 17–22. Guy makes no showing to overcome the procedural default. I deny Claim 7 as procedurally defaulted.

8.     Claims 2F2 and 5

In Claim 2F2, Guy claims that his trial counsel was ineffective for failing to object to jury instructions on felony murder and conspiracy, on the grounds that Guy was deprived of adequate notice. ECF No. 90 at 87–93. In Claim 5, Guy claims that his conviction is invalid under the federal constitution because of inadequate notice of the charges against him. ECF No. 90 at 186–89. In both of these claims, Guy asserts he received inadequate notice that the prosecution would rely upon a felony-murder theory of first-degree murder. Claim 5 is the substantive federal constitutional claim, made under the Sixth and Fourteenth Amendments. Claim 2F2 is the related claim of ineffective assistance of trial counsel; that is, the claim that Guy's trial counsel should have objected to the trial court instructing the jury on felony murder because he received inadequate notice of that theory.

1  Guy asserted the ineffective assistance of counsel claim in Claim 2F2 in his first state

2 habeas action, and the Supreme Court of Nevada affirmed the denial of relief:

3  Guy … claimed that trial counsel should have challenged the instructions on felony murder and conspiracy on the grounds that the State failed to provide

4  adequate notice of those theories. Trial counsel's performance was not deficient because, at the time of Guy's trial, the State was not required to allege felony

5  murder or conspiracy in an indictment. *See Redmen v. State*, 108 Nev. 227, 232, 828 P.2d 395, 398 (1992), *overruled by Alford v. State*, 111 Nev. 1409, 906 P.2d

6  714 (1995); *Goldsmith v. Sheriff*, 85 Nev. 295, 304, 454 P.2d 86, 92 (1969).

7 ECF No. 53-9 at 14–15.

8  To the extent that the Supreme Court of Nevada determined that Guy's trial counsel

9 would not have had a meritorious objection based on state law, that ruling is authoritative. At the

10 time of Guy's trial, state law did not require felony murder or conspiracy to be alleged in an

11 indictment. *See* ECF No. 53-9 at 14–15; *see also Redmen v. State*, 828 P.2d 395, 398 (Nev.

12 1992), *overruled by Alford v. State*, 906 P.2d 714 (Nev. 1995). Therefore, Guy's counsel did not

13 perform unreasonably by not objecting to these instructions on state law grounds, and Guy was

14 not prejudiced.

15  Turning to the question whether Guy's trial counsel was ineffective for not objecting to

16 these instructions based on a notice requirement imposed by federal law, the Supreme Court of

17 Nevada apparently ruled that trial counsel was not ineffective but did not discuss that aspect of

18 the claim. Because the Supreme Court of Nevada rejected this part of the claim without

19 discussion, I "must determine what arguments or theories supported or ... could have supported,

20 the state court's decision; and then [I] must ask whether it is possible fairminded jurists could

21 disagree that those arguments or theories are inconsistent with the holding in a prior decision of

22 [the U.S. Supreme] Court." *Harrington*, 562 U.S. at 102. Applying that standard, I find that the

23

1  Supreme Court of Nevada did not unreasonably apply *Strickland* or any other clearly established

2  federal law and did not unreasonably determine the facts in light of the evidence.

3      The Sixth Amendment, which is applicable to the states through the Due Process Clause

4  of the Fourteenth Amendment, guarantees a criminal defendant the right to be clearly informed

5  of the nature and cause of the charges against him. Under federal law, though, "a defendant can

6  be adequately notified of the nature and cause of the accusation against him by means other than

7  the charging document." *Calderon v. Prunty*, 59 F.3d 1005, 1009–10 (9th Cir. 1995) (issue was

8  whether the defendant received adequate notice of prosecution's theory that he committed first

9  degree murder by means of lying in wait), citing *Sheppard v. Rees*, 909 F.2d 1234, 1236 n.2 (9th

10 Cir. 1989), and *Morrison v. Estelle*, 981 F.2d 425, 428 (9th Cir. 1992), *cert. denied*, 508 U.S.

11 920 (1993); *see also Murtishaw v. Woodford*, 255 F.3d 926, 953–54 (9th Cir. 2001), *cert. denied*,

12 535 U.S. 935 (2002) (prosecution's opening statement and evidence provided defendant with

13 notice of felony-murder theory).

14      In this case, Guy received notice of the State's theories because the notice of intent to

15 seek the death penalty alleged the aggravating circumstance of murder committed during a

16 robbery. ECF No. 42-6 at 3 ("The murder was committed while the person was engaged in the

17 commission of or an attempt to commit any robbery."). On the first day of trial, Guy's trial

18 counsel stated on the record that it was his "understanding from the notice of intent to seek the

19 death penalty that the State apparently also intends to try to prove some kind of underlying crime

20 in connection with this[,] namely basically a robbery, which apparently goes beyond the scope of

21 the original indictment." ECF No. 146-1 at 4. The prosecutor then explained that state law did

22 not require felony murder to be pleaded in the indictment and stated: "at the time of settlement of

23 jury instructions, we would be asking the Court to give instructions on the felony murder rule as

1  well as aiding and abetting." *Id* at 5. Then, in his opening statement, the prosecutor made clear

2  that the prosecution was relying on a felony-murder theory:

3        The evidence will show beyond a reasonable doubt that the individual that
was driving the car that was participating in this rip-off was Curtis Guy. And in
4  the State of Nevada, when individuals participate in crimes when an individual is
shot, when people are ripping off other people and an individual gets killed, the
5  triggerman and his participants are held accountable for the crime. In this case it's
first degree murder.

6

7  ECF No. 147-1 at 13. Furthermore, the evidence presented at trial showed that Evans was killed

8  in the course of a robbery carried out by Guy and Pendleton acting together. *See* summary of

9  evidence, *supra*, pp. 3–9.

10        Under these circumstances, the Supreme Court of Nevada could reasonably have

11  concluded that Guy received constitutionally adequate notice of the prosecution's theories, that

12  Guy's trial counsel was not ineffective for not objecting to the trial court giving the felony-

13  murder and conspiracy jury instructions, and that Guy was not prejudiced. *See Morrison*, 981

14  F.2d at 428–29 (9th Cir. 1992) (notice of felony-murder theory adequate where notice was given

15  through jury instructions prosecutor submitted two days before defense closing argument and

16  from evidence presented at trial). The Supreme Court of Nevada's ruling was not an

17  unreasonable application of *Strickland* or any other clearly established federal law, nor was it an

18  unreasonable determination of the facts in light of the evidence. *See Lopez v. Smith*, 574 U.S. 1,

19  8–9 (2014) (ruling that there was no clearly established federal law specifying the notice the

20  prosecution must give the defendant that it will rely on aiding and abetting theory).[7] I deny relief

21  on Claim 2F2.

22

23  [7] *See also Maldonado v. Holland*, 2017 WL 5001423, *22 (C.D. Cal.) ("[I]n light of the absence
of Supreme Court law clearly setting forth the standards for adequacy of notice, under the
AEDPA standard of review Petitioner cannot obtain federal habeas relief on this claim."), report

In Claim 5, Guy claims that his conviction violates the federal constitution because (1) he received inadequate notice of the prosecution's theories, and (2) despite the inadequate notice, the trial court instructed the jury on those theories. ECF No. 90 at 186–89. This claim is procedurally defaulted. *See* discussion *supra*, pp. 17–22. Guy makes no showing to overcome the procedural default. I deny Claim 5 as procedurally defaulted.

9.      Claim 2F3

In Claim 2F3, Guy asserts that his trial counsel was ineffective for failing to request a limiting instruction informing the jury that Guy's intention to obtain drugs with the victim's assistance could not be considered as propensity evidence of his guilt of the murder, as the object of the relevant conspiracy offense, as propensity evidence of an intent to commit robbery, or as the object of the aiding and abetting offense. ECF No. 90 at 93–95.

Guy asserted this claim in state court, and the Supreme Court of Nevada affirmed denial of relief on the claim:

> Guy claimed that trial counsel was ineffective for failing to request a limiting instruction informing the jury that Guy's intention to obtain drugs with Pendleton could not be considered as evidence of his propensity to commit robbery or murder. [Footnote omitted.] Because evidence of the drug transaction was necessary to describe the alleged crime and provided a motive for murder, it was admissible under NRS 48.035(3). Accordingly, a limiting instruction pursuant to NRS 48.045 was not required, and Guy failed to show that a cautionary instruction pursuant to NRS 48.035 would have changed the result of trial. Therefore, the district court did not err in denying this claim.

ECF No. 53-9 at 19–20. NRS 48.035(3), cited by the Supreme Court of Nevada, states:

> Evidence of another act or crime which is so closely related to an act in controversy or a crime charged that an ordinary witness cannot describe the act in controversy or the crime charged without referring to the other act or crime shall

and recommendation accepted and adopted, 2017 WL 4990493 (C.D. Cal. 2017); *Wilson v. Hedgpeth*, 2014 WL 3767792, *16 (N.D. Cal. 2014) ("[T]he Supreme Court has clearly established a notice requirement for charges, yet has not clearly established a notice requirement for *theories of liability* for a given charge." (italics in original)).

1  not be excluded, but at the request of an interested party, a cautionary instruction
2  shall be given explaining the reason for its admission.

3  NRS 48.035(3). Relatedly, NRS 48.045(2) states that "[e]vidence of other crimes, wrongs or acts
4  is not admissible to prove the character of a person in order to show that the person acted in
5  conformity therewith. It may, however, be admissible for other purposes, such as proof of
6  motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or
7  accident."  To the extent the Supreme Court of Nevada's ruling turned on that court's
8  construction of these statutes and their application, that ruling is authoritative and is not subject
9  to review in this federal habeas action. *See Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 67–68;
10  *Bonin*, 59 F.3d at 841.

11  Guy does not appear to argue that this alleged instructional error so infected his entire
12  trial with unfairness that it violated his federal constitutional right to due process of law. *See*
13  ECF No. 90 at 93–95; ECF No. 164 at 50–51; *see also Estelle*, 502 U.S. at 72 ("The only
14  question for us is 'whether the ailing instruction by itself so infected the entire trial that the
15  resulting conviction violates due process.'" (quoting *Cupp v. Naughten*, 414 U.S. 141, 147
16  (1973))).

17  The Supreme Court of Nevada's denial of relief on this claim was not contrary to, or an
18  unreasonable application of, *Strickland*, or any other clearly established federal law as
19  determined by the Supreme Court, and it was not based on an unreasonable determination of the
20  facts in light of the evidence presented, I deny relief on Claim 2F3.

21  10.  Claims 2F4, 2F5, 3B and 3C

22  In Claim 2F4, Guy asserts that his trial counsel was ineffective with respect to the jury
23  instructions regarding conspiracy (Instructions No. 18 and 20). ECF No. 90 at 95–101. In Claim

45

2F5, Guy asserts that his trial counsel was ineffective with respect to the jury instructions regarding aiding and abetting (Instruction No. 22). *Id.* at 101–04. In Claim 3B, Guy asserts that the trial court erred in giving the jury improper instructions on conspiracy. *Id*. at 123–28. And in Claim 3C, Guy asserts that the trial court erred in giving the jury improper instructions on aiding and abetting. *Id*. at 129–31.

Guy asserted these claims in state court, and the Supreme Court of Nevada affirmed denial of relief on them:

> Guy claimed that trial counsel was ineffective for failing to challenge several instructions related to conspiracy and aiding and abetting. We conclude that trial counsel's performance was not deficient in this regard and that Guy failed to show prejudice because, even if counsel had successfully challenged these instructions, the results of trial would not have been different; Guy was clearly guilty of felony murder. *See Cortinas v. State*, 124 Nev. 1013, 1028–29, 195 P.3d 315, 325–26 (2008), *cert. denied*, 558 U.S. [956], 130 S. Ct. 416 (2009); *Guy*, 108 Nev. at 774–76, 839 P.2d at 581–82.

ECF No. 53-9 at 15. I agree with the Supreme Court of Nevada's ruling, and it was not contrary to, or an unreasonable application, of clearly established federal law as determined by the Supreme Court.  Nor was it based on an unreasonable determination of the facts in light of the evidence presented. As is discussed above, at pp. 3–9, there was overwhelming evidence presented at trial to support Guy's conviction on a felony-murder theory: evidence that Guy and Pendleton robbed Evans, and Evans was killed during the course of the robbery. Therefore, any error in the trial court's instructions to the jury on conspiracy or aiding and abetting, as theories separate from felony murder to convict Guy of first-degree murder, or any ineffectiveness of Guy's counsel with respect to such instructions, was harmless. Guy does not claim that his counsel's ineffectiveness with respect to these instructions had any effect on the jury's

consideration of the felony-murder theory. Guy was not prejudiced in the manner claimed by Guy. I deny relief on Claims 2F4 and 2F5.

In Claims 3B and 3C, Guy claims that the trial court erred in giving the jury improper instructions on conspiracy and aiding and abetting. ECF No. 90 at 123–31. These claims are procedurally defaulted. *See* discussion *supra*, pp. 17–22. Guy makes no showing to overcome these procedural defaults. I deny Claims 3B and 3C as procedurally defaulted.

### 11.    Claims 2F7 and 3F

In Claim 2F7, Guy asserts that his trial counsel was ineffective for failing to object to the order of the jury instructions concerning mere presence (Instructions No. 23 and 24) and for failing to proffer a supplemental instruction regarding Guy's presence before and after the offense. ECF No. 90 at 106–07. In Claim 3F, Guy asserts that the trial court erred in improperly instructing the jury on mere presence. *Id*. at 140–41.

Affirming denial of relief on this claim in Guy's first state habeas action, the Supreme Court of Nevada stated:

> Guy claimed that trial counsel was ineffective for failing to object to the order of two mere-presence instructions. This argument lacks merit. The jury was also instructed that "the order in which the instructions are given has no significance as to their relative importance." Therefore, trial counsel was not unreasonable when he failed to raise this issue.

ECF No. 53-9 at 17. That was a ruling on a matter of state law. Guy does not make any claim that his counsel should have asserted an objection to the mere-presence instructions under federal law or that he should have proposed a supplemental instruction required under federal law. Accepting the Supreme Court of Nevada's reading of state law, as I must (*see Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 67–68; *Bonin*, 59 F.3d at 841), I find that court's ruling on this claim to be reasonable. It was not contrary to, or an unreasonable application of, *Strickland* or

any other clearly established federal law as determined by the Supreme Court, and it was not based on an unreasonable determination of the facts in light of the evidence. I deny relief on Claim 2F7.

In Claim 3F, Guy claims that the trial court erred in improperly instructing the jury on mere presence. ECF No. 90 at 140–41. This claim is procedurally defaulted. *See* discussion *supra*, pp. 17–22. Guy makes no showing to overcome the procedural default. I deny Claim 3F as procedurally defaulted.

12.     Claims 2F8 and 3E

In Claim 2F8, Guy asserts that his trial counsel was ineffective for failing to make a sufficiently thorough objection to the jury instructions concerning malice (Instructions No. 5 and 6). ECF No. 90 at 107–10. In Claim 3E, Guy asserts that the trial court erred in improperly instructing the jury on malice. *Id*. at 137–40.

On Guy's direct appeal, the Supreme Court of Nevada denied relief on this claim:

> Appellant assigns error to several of the jury instructions given at the guilt phase of his trial. In reviewing these assignments of error, our task is to ensure that the instructions correctly stated existing law. *See Barron v. State*, 105 Nev. 767, 783 P.2d 444 (1989).
>
> Appellant first challenges Jury Instruction No. 5, which defined malice aforethought:
>
> > The condition of the mind described as malice aforethought may arise, not alone from anger, hatred, revenge or from particular ill will, spite or grudge toward the person killed, but may result from any unjustifiable or unlawful motive or purpose to injure another, which proceeds from a heart fatally bent on mischief or with reckless disregard of consequences and social duty ....
>
> According to appellant, this language does not accurately reflect the law of this state. In addition, appellant contends that this language, when read in conjunction with Jury Instruction No. 6 (defining express and implied

48

malice), [footnote omitted] confused the jurors and incorrectly implied that malice was imputable to appellant merely because he was present when Pendleton shot Evans.

In *Thedford v. Sheriff*, 86 Nev. 741, 744, 476 P.2d 25, 27 (1970), this court held that malice, as applied to murder, "does not necessarily import ill will toward the victim, but signifies general malignant recklessness of others' lives and safety or disregard of social duty." This holding validates the language used in Jury Instruction No. 5.

Appellant's challenge to Jury Instruction No. 6 also lacks merit; for this instruction accurately informed the jury of the distinction between express malice and implied malice. *See* NRS 200.020; *Keys v. State*, 104 Nev. 736, 766 P.2d 270 (1988). Moreover, because appellant offers no evidence showing confusion on the part of the jury, his allegation is speculative.

*Guy*, 839 P.2d at 582–83.

The Supreme Court of Nevada's ruling was based on its construction of Nevada state law, which is beyond the purview of this federal habeas action. *See Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 67–68; *Bonin*, 59 F.3d at 841. Guy does not show this ruling to be contrary to, or an unreasonable application of, any Supreme Court precedent, and it was not based on an unreasonable determination of the facts in light of the evidence. I deny relief on Claim 3E.

In Guy's first state habeas action, affirming denial of relief on what is here the claim of ineffective assistance of trial counsel in Claim 2F8, the Supreme Court of Nevada stated:

Guy claimed that trial counsel was ineffective for failing to make a "sufficiently thorough objection" to the malice instructions. This claim was patently without merit. The instructions given at Guy's trial have been repeatedly upheld by this court, *see, e.g.*, [*Thomas v. State*, 120 Nev. 37, 49–50, 83 P.3d 818, 827 (2004)], and were upheld on direct appeal from Guy's conviction and sentence, [*Guy v. State*, 108 Nev. 770, 776–77, 839 P.2d 578, 582–83 (1992)], and therefore Guy failed to demonstrate that a more strenuous argument had any likelihood of changing the results of trial.

ECF No. 53-9 at 17–18. Given this ruling that the jury instructions in question were proper under Nevada law, and because Guy does not point to any federal law contrary to the instructions, this

ruling, too, was reasonable. It was not contrary to, or an unreasonable application of, *Strickland* or any other clearly established federal law as determined by the Supreme Court, and it was not based on an unreasonable determination of the facts in light of the evidence. I deny relief on Claim 2F8.

### 13.     Claims 2F9, 3I1, 3I2, 3I3 and 3I4

In Claim 2F9, Guy asserts that his trial counsel was ineffective for failing to raise appropriate objections to five jury instructions regarding the State's burden of proof: the "general intent" instruction (Instruction No. 28), the instruction on reasonable doubt (Instruction No. 29), the instruction that the jury "determine the guilt or innocence of the defendant from the evidence in the case" (Instruction No. 30), the "equal and exact justice" instruction (Instruction No. 38), and the "anti-sympathy" instruction (Instruction No. 34). ECF No. 90 at 110–13. In claims 3I1, 3I2, 3I3 and 3I4, Guy claims that his federal constitutional rights were violated by the trial court giving four of those instructions: the instruction on reasonable doubt, the "general intent" instruction, the "equal and exact justice" instruction, and the instruction that the jury "determine the guilt or innocence of the defendant from the evidence in the case." *Id*. at 147–54.

On the appeal in Guy's first state habeas action, the Supreme Court of Nevada affirmed the denial of relief on Claim 2F9, the ineffective assistance of trial counsel claim.

> Guy claimed that trial counsel was ineffective for failing to object to several instructions that permitted him to be convicted based on a lesser burden of proof. His claims in this regard were without merit.
>
> First, Guy asserted that an instruction stating, "The intent with which an act is done is shown by the facts and circumstances surrounding the case" was flawed because it lacked permissive language and therefore directed the jury to presume an essential element of the offense. The instruction was consistent with the Nevada statutes, *see* NRS 193.200, and trial counsel's decision not to challenge this instruction was reasonable. Furthermore, Guy cannot demonstrate prejudice because other instructions informed the jury that to convict Guy of felony murder "the specific intent to commit robbery must be proven beyond a

reasonable doubt," and that the State had the burden of "proving beyond a reasonable doubt every material element of the crime charged."

Guy next claimed that the reasonable doubt instruction improperly minimized the burden of proof. However, the instruction that was given at trial is mandated by statute, NRS 175.211, and has been repeatedly upheld by this court, *Garcia v. State*, 121 Nev. 327, 339–40, 113 P.3d 836, 844 (2005); *Lord v. State*, 107 Nev. 28, 38–40, 806 P.2d 548, 554–56 (1991). Therefore, counsel acted reasonably in failing to challenge it.

Guy claimed that the instruction to the jurors that they should not consider the guilt of any other person because they were "here to determine the guilt or innocence of the defendant" conflated the burden of proof, by requiring the jury to find Guy innocent in order to acquit, rather than merely not guilty. This claim was patently without merit. There are countless instances in which we have referred to the jury's determination as one of guilt or innocence. *See, e.g.*, *Valdez v. State*, 124 Nev. 1172, 1187, 196 P.3d 465, 475 (2008); *Chartier v. State*, 124 Nev. 760, 762, 191 P.3d 1182, 1183–84 (2008); *Browning v. State*, 124 Nev. 517, 527, 188 P.3d 60, 67 (2008). And other instructions clearly instructed the jury that the State had the burden to prove every element beyond a reasonable doubt. Therefore, Guy failed to show prejudice resulting from counsel's failure to object.

Finally, Guy claimed that the "equal and exact justice" and anti-sympathy instructions lowered the burden of proof because, in contrast with civil proceedings, parties to a criminal case are not on equal footing. We have previously rejected such arguments as meritless. *See, e.g.*, *Thomas v. State*, 120 Nev. 37, 46, 83 P.3d 818, 824–25 (2004). Guy failed to show that he was prejudiced by counsel's failure to object to this instruction.

ECF No. 53-9 at 15–17. Guy has not shown this ruling by the Supreme Court of Nevada to be contrary to, or an unreasonable application of, *Strickland* or any other clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence. I deny relief on Claim 2F9.

Guy asserted his substantive claim regarding the reasonable doubt instruction—Claim 3I1—on his direct appeal (*see* ECF No. 44-6 at 5–6), and the Supreme Court of Nevada denied relief on the claim without discussion. *Guy*, 839 P.2d 578 (Nev. 1992). Guy does not show that ruling to be contrary to, or an unreasonable application of, any Supreme Court precedent, or to

1  be based on an unreasonable determination of the facts in light of the evidence. The Ninth

2  Circuit Court of Appeals has upheld the use of Nevada's reasonable doubt instruction. *See*

3  *Ramirez v. Hatcher*, 136 F.3d 1209, 1213–15 (9th Cir. 1998). I deny relief on Claim 3I1.

4      Claims 3I2 and 3I3, Guy's substantive claims regarding the "general intent" instruction

5  and the "equal and exact justice" instruction, are procedurally defaulted. *See* discussion *supra*,

6  pp. 17–22. Guy makes no showing to overcome these procedural defaults. I deny Claims 3I2 and

7  3I3 as procedurally defaulted.

8      On Guy's direct appeal, the Supreme Court of Nevada denied relief on his claim

9  regarding the instruction that the jury "determine the guilt or innocence of the defendant from the

10  evidence in the case," his Claim 3I4 in this case. That court ruled as follows:

11      Appellant next challenges Jury Instruction No. 30, which states:

12          You are here to determine the guilt or innocence of the
           defendant from the evidence in the case. You are not called upon
13          to return a verdict as to the guilt or innocence of any other person.
           So, if the evidence in the case convinces you beyond a reasonable
14          doubt of the guilt of the defendant you should so find, even though
           you may believe one or more persons are also guilty.
15
      According to appellant, this instruction tended to confuse the jury by leading it to
16      "an erroneous conclusion that [appellant] was a moving party in causing the death
      of Evans and override [sic] any doubts the trier of fact may had [sic] as to
17      [appellant's] knowledge of and/or participation in the events which led to Evans
      [sic] death."
18
          We hold that the trial court did not err in giving Jury Instruction No. 30. In
19      effect, this instruction admonishes the jury to ignore Pendleton's culpability when
      determining whether appellant is guilty as charged. Such an instruction was both
20      appropriate and necessary.

21  *Guy*, 839 P.2d at 583. This was not an unreasonable application of any Supreme Court precedent,

22  nor was it an unreasonable determination of the facts in light of the evidence presented. I deny

23  Claim 3I4.

14.     Claims 2F10 and 3D

In Claim 2F10, Guy asserts that his trial counsel was ineffective for failing to object to the jury instruction on premeditation. ECF No. 90 at 113–14. And in Claim 3D, Guy claims that the trial court erred and violated his federal constitutional rights in giving that instruction. *Id*. at 131–37. The instruction at issue in these claims, Instruction No. 7, included the so-called "*Kazalyn* instruction":

> Murder of the First Degree is Murder which is (a) perpetrated by means of any kind of willful, deliberate and premeditated killing, or (b) committed in the perpetration of a Robbery.

> Premeditation is a design, a determination to kill, distinctly formed in the mind at any moment before or at the time of killing.

> Premeditation need not be for a day, an hour or even a minute. It may be as instantaneous as successive thoughts of the mind. For if the jury believes, from the evidence, that the act constituting the killing has been preceded by and, has been the result of premeditation, no matter how rapidly the premeditation is followed by the act constituting the killing, it is willful, deliberate, and premeditated murder.

> Murder which is committed in the perpetration of robbery is deemed to be murder of the first degree, whether the killing was intentional, unintentional or accidental. This is called the Felony-Murder Rule. It is not necessary that the robbery be charged in the indictment in order for the Felony-Murder Rule to apply to this case.

> The specific intent to commit robbery must be proven beyond a reasonable doubt.

ECF No. 2-11 at 37.

Guy argues that this instruction misstated Nevada law and violated his federal constitutional rights by omitting the element of deliberation and relieving the requirement that the jury find that element of first-degree murder beyond a reasonable doubt. Guy argues: "The element of deliberation has been part of the first-degree murder statute ever since the statute was

first enacted by the territorial legislature in 1861." *Id*. at 113.[8] Guy's argument relies on an oversimplification of the law—both Nevada law and the rulings of this court and the Ninth Circuit Court of Appeals.[9]  This court recently summarized the development of the law on this issue:

> The Nevada statutes define first degree murder, in relevant part, as a "willful, deliberate and premeditated killing." Nev. Rev. Stat. § 200.030(1)(a). The use of the foregoing instruction was condoned by the Supreme Court of Nevada in *Kazalyn v. State*, 825 P.2d 578 (Nev. 1992), and is commonly referred to as the *Kazalyn* instruction. Shortly thereafter, the Supreme Court of Nevada confirmed "that the terms deliberate, premeditated and willful are a single phrase, meaning simply that the actor intended to commit the act and intended death to result." *Powell v. State*, 838 P.2d 921, 927 (Nev. 1992). Eight years later, however, the Supreme Court of Nevada ruled, in *Byford v. State*, 994 P.2d 700 (Nev. 2000), that the *Kazalyn* instruction was deficient because it defined only premeditation and failed to provide an independent definition for deliberation. *See Byford*, 994 P.2d at 713.
>
> In *Polk v. Sandoval*, 503 F. 3d 903 (9th Cir. 2007), the court held that the *Kazalyn* instruction violates due process because it relieves the State "of its burden of proving every element of first-degree murder beyond a reasonable doubt." *Polk*, 503 F. 3d at 909. In *Babb v. Lozowsky*, 719 F.3d 1019 (9th Cir. 2013), however, the court determined that its holding in *Polk* regarding the constitutionality of the *Kazalyn* instruction was no longer good law in light of the intervening Supreme Court of Nevada decision in *Nika v. State*, 198 P.3d 839 (Nev. 2008), which explained "that *Byford* represented a change in, rather than a clarification of, [Nevada] law." *Babb*, 719 F.3d at 1029. Thus, in cases in which the conviction was final prior to the *Byford* decision, due process did not require independent definitions for premeditation and deliberation because, prior to *Byford*, they were not separate elements of the mens rea necessary for first degree murder. *See id*.

---

[8] Guy cites to 1861 Nev. Stat. § 17 at 58–59; Nev. Rev. Stat. § 200.030(1); *Byford v. State*, 994 P.2d 700 (Nev. 2000); and *Polk v. Sandoval*, 503 F.3d 903 (9th Cir. 2007).

[9] Particularly, Guy does not take into consideration *Powell v. State*, 838 P.2d 921 (Nev. 1992); *Nika v. State*, 198 P.3d 839 (Nev. 2008); *Babb v. Lozowsky*, 719 F.3d 1019 (9th Cir. 2013); *Riley v. McDaniel*, 786 F.3d 719 (9th Cir. 2015) ("*Riley I*"); *Leavitt v. State*, 386 P.3d 620 (Nev. 2016); *Howard v. Gittere*, 392 F. Supp. 3d 1205 (D. Nev. 2019); and *Riley v. Filson*, 933 F.3d 1068 (9th Cir. 2019) ("*Riley II*"). All of these cases are important in understanding the long history of this issue and Guy's claim. *See* ECF No. 90 at 113–14, 131–37; ECF No. 164 at 60–61, 81–83.

1    In a subsequent case, however, the Ninth Circuit determined that, prior to
2    *Powell*, "deliberation was a discrete element of first-degree murder in Nevada."
     *Riley v. McDaniel*, 786 F.3d 719, 723 (9th Cir. 2015) ("*Riley I*"). Having so
3    determined, the court held that the use of the *Kazalyn* instruction at Riley's trial in
     1990 (i.e., pre-*Powell*) violated his right to due process under the United States
4    Constitution. *Id*. at 724. The court also concluded that Riley was entitled to
     habeas relief because the error was not harmless based on the "uncontested facts"
5    in his case. *Id*. at 725.

                                    *   *   *
6

7    This court has questioned the Ninth Circuit's analysis of Nevada law in
     *Riley I. See Howard*, 392 F. Supp. 3d at 1212–13. And, as noted in *Howard*, the
8    Supreme Court of Nevada has also stated its disagreement with *Riley 1*. *See*
     *Leavitt v. State*, 386 P.3d 620, 620–21 (Nev. 2016). Even so, the Ninth Circuit has
9    stood by its holding that "before and after *Powell*, the Supreme Court of Nevada
     interpreted its first-degree murder statute to include three distinct mens rea
10   elements." *See Riley v. Filson*, 933 F.3d 1068, 1074 (9th Cir. 2019) ("*Riley II*").
     The court in *Riley II* distinguished between Nevada law requiring "separate
11   *definitions* of the statutory mens rea elements" and "Nevada law concerning
     whether the mens rea terms were separate *elements*." *Riley II*, 933 F.3d at 1073
12   (emphasis in the original). The court held that only the latter is relevant to its
     decision in *Riley I. Id*.

13   *Emil v. Gittere*, No. 3:00-cv-0654-KJD-CLB, 2024 WL 1554367 (D.Nev., April 10, 2024) at

14   *26–27.

15   Turning to the Supreme Court of Nevada's ruling on Guy's ineffective assistance of trial

16   counsel claim in his Claim 2F10, the Supreme Court of Nevada affirmed the denial of relief on

17   the claim, as follows:

18   Guy claimed that trial counsel was ineffective for failing to object to an
     improper instruction on premeditation, also known as the *Kazalyn* instruction.
19   [Footnote omitted.] However, this instruction was widely used at the time of trial
     and was not disapproved until years after Guy was convicted. *See Byford v. State*,
20   116 Nev. 215, 994 P.2d 700 (2000). Therefore, counsel was not unreasonable for
     failing to challenge it. Moreover, we have since held that the decision in *Byford*
21   does not have retroactive application and does not apply to Guy, whose
     conviction was final in 1993. *See Nika v. State*, 124 Nev. 1272, 1287, 198 P.3d
22   839, 849–50 (2008).

23

                                         55

1   ECF No. 53-9 at 17. Given the status of this legal issue at the time of Guy's 1991 trial, and the

2   long and complicated development of the issue since then, it was reasonable for the Supreme

3   Court of Nevada to rule that Guy's trial counsel did not perform unreasonably in 1991 in not

4   objecting to the *Kazalyn* instruction and that Guy was not prejudiced. Guy does not show the

5   Supreme Court of Nevada's ruling to be contrary to, or an unreasonable application of,

6   *Strickland* or any other Supreme Court precedent, or an unreasonable determination of the facts

7   in light of the evidence presented. I deny Claim 2F10.

8          Claim 3D, Guy's claim that his federal constitutional rights were violated by the trial

9   court giving the *Kazalyn* instruction, is procedurally defaulted. *See* discussion *supra*, pp. 17–22.

10  Guy makes no showing to overcome this procedural default. And claim 3D is not a claim of

11  ineffective assistance of trial counsel, so *Martinez* does not apply. I deny Claim 3D as

12  procedurally defaulted.

13              15.   Claims 2F11 and 3H

14         In Claim 2F11, Guy claims that his trial counsel was ineffective for failing to request jury

15  instructions and verdict forms for lesser included offenses to which he conceded Guy's guilt in

16  closing argument. ECF No. 90 at 114–16. Specifically, Guy claims that his trial counsel should

17  have requested that the jury be instructed on the crimes of "accessory after the fact to murder"

18  and "larceny not amounting to robbery," and that he should have requested that verdict forms be

19  provided for those crimes. *Id.*

20         Guy asserted this claim in his first state habeas action, and the Supreme Court of Nevada

21  affirmed the denial of it:

22         Guy claimed that trial counsel was ineffective for failing to request instructions
           and verdict forms for the lesser-included offenses of accessory to murder and
23         larceny. Neither of these crimes are lesser-included offenses of murder. *See*
           *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *Barton v. State*, 117 Nev.

56

686, 692, 30 P.3d 1103, 1107 (2001), *overruled on other grounds by Ross v. State*, 122 Nev. 1258, 147 P.3d 1101 (2006); NRS 200.010 (defining murder); NRS 195.030 (defining accessories); NRS 205.2175 (defining larceny). Moreover, Guy's claim that trial counsel failed to request an instruction on accessory to murder is belied by the record. And Guy failed to show prejudice because he was clearly guilty of felony murder.

ECF No. 53-9 at 21–22.

The Supreme Court of Nevada's ruling was largely based on that court's reading of state law and is therefore beyond the scope of this federal habeas review. *See Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 67–68; *Bonin*, 59 F.3d at 841. Guy does not offer any argument that the ruling is contrary to, or an unreasonable application of, *Strickland* or any other Supreme Court precedent, or an unreasonable determination of the facts in light of the evidence presented. *See* ECF No. 90 at 114–16; ECF No. 164 at 61–62. I deny Claim 2F11.

Claim 3H is the related substantive claim: he claims that his federal constitutional rights were violated because the trial court did not instruct the jury on lesser-included offenses. ECF No. 90 at 145–46. This claim is procedurally defaulted. *See* discussion *supra*, pp. 17–22. Guy makes no showing to overcome the procedural default. I deny Claim 3H as procedurally defaulted.

16.     Claims 2F13, 4A and 6

In Claim 2F13, Guy asserts that his trial counsel was ineffective for failing to cross examine Tyrone White with prior inconsistent statements. ECF No. 90 at 117–18. In Claim 4A, Guy asserts that his federal constitutional rights were violated because the prosecution failed to disclose exculpatory and impeachment evidence regarding White and had White testify falsely. *Id*. at 158–74. In Claim 6, Guy claims that his federal constitutional rights were violated because the trial court precluded him from presenting exculpatory testimony of White regarding

statements made by Pendleton. *Id*. at 189–91. Essentially, in all three of these claims Guy

contends that he was unfairly precluded from presenting evidence that might have helped show

that Guy did not own the gun used to shoot Evans, and/or that Pendleton admitted to shooting

Evans. All three claims are without merit, as it was undisputed at trial that Pendleton shot Evans,

and there was no issue regarding who owned the gun. It is plain that the evidence Guy believes

was wrongfully excluded would have made no difference with respect to overwhelming proof

that he was guilty of first-degree felony murder.  At any rate, all three claims are procedurally

defaulted. *See* discussion *supra*, pp. 17–22.  Guy makes no showing to overcome the procedural

defaults.

With respect to Claim 4A, Guy argues that he can show cause and prejudice for the

procedural default because exculpatory and impeachment evidence concerning White was not

disclosed by the prosecution. Guy supports this argument with exhibits not presented in state

court in his first state habeas action. Under the holdings in *Pinholster* and *Ramirez*, however,

Guy must satisfy the requirements of 28 U.S.C. § 2254(e)(2) for such evidence to be admissible,

and he does not make any effort to do so. Certainly, Guy does not show that the alleged

exculpatory and impeachment evidence regarding White would have been "sufficient to establish

by clear and convincing evidence that but for constitutional error, no reasonable factfinder would

have found [him] guilty of [first-degree felony murder]." 28 U.S.C. § 2254(e)(2).

But even considering the evidence proffered by Guy—for purposes of analysis only—he

does not show cause and prejudice to overcome the procedural default. First of all, there is a

question of fact regarding whether exculpatory and impeachment evidence regarding White was

actually withheld by the prosecution. *See* ECF No. 146-1 at 5–7 (statements by prosecutor and

Guy's trial counsel indicating that prosecution supplied or offered to supply everything regarding

Guy's and Pendleton's cases to Guy's trial counsel, which presumably would have included the evidence at issue here); *see also* ECF No. 90 at 65–66 (acknowledgement of that in-court exchange in second amended petition). Regardless, even assuming the evidence at issue was withheld, Guy does show that he was prejudiced for purposes of the cause-and-prejudice standard, and he does not show that the evidence was material. It was undisputed at trial that Pendleton shot Evans, and the ownership of the gun had no bearing on the question of Guy's guilt of first-degree felony murder.[10]  I deny Claims 2F13, 4A and 6 as procedurally defaulted.

17.  Claims 2F14 and 4C

Guy's Claim 2F14, in its entirety, is as follows:

> The State committed misconduct during its guilt phase argument when it misstated the standard for proof beyond a reasonable doubt (3/6/91 a.m. TT at 23), misstated the law regarding felony murder (3/6/91 a.m. TT at 37–38), and told the jury that "I always wish we could wink at each other or something so I'd know if you were agreeing ...." (3/6/91 a.m. TT at 44.) Trial counsel was ineffective for failing to object to any of these instances of misconduct. There is a reasonable probability of a more favorable outcome if trial counsel had objected.

ECF No. 90 at 119; *see also* ECF No. 164 at 63 (Guy's reply to answer with respect to this claim). At most, Guy asserted, obliquely, part of this claim—the claim that his trial counsel was ineffective for not objecting to inappropriate prosecution argument misstating the reasonable

---

[10] *See United States v. Frady*, 456 U.S. 152, 170 (1982) (to show prejudice, for purposes of cause-and-prejudice analysis, a petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions"); *United States v. Bagley*, 473 U.S. 667, 682 (1985) (evidence withheld by prosecution is material for purposes of a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), if there is a reasonable probability that if it had been disclosed to the defense, the result of the proceeding would have been different); *United States v. Agurs*, 427 U.S. 97, 103 (1976) (for purposes of a claim under *Napue v. Illinois*, 360 U.S. 264 (1959), a conviction "obtained by the knowing use of perjured testimony is fundamentally unfair[ ] and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury"); *see also Jackson v. Brown*, 513 F.3d 1057, 1076 (9th Cir. 2008) (regarding materiality in cases of concurrent *Brady* and *Napue* claims).

1   doubt standard—in his first state habeas action (*see* ECF No. 49-14 at 16–17), and the Supreme

2   Court of Nevada affirmed the denial of the claim without discussion.[11]

3       A petitioner is entitled to relief on a claim of prosecutorial misconduct only when the

4   misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of

5   due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v.*

6   *DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis in cases of

7   alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."

8   *Smith v. Phillips*, 455 U.S. 209, 219 (1982). To establish a due process violation, "it is not

9   enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden*,

10  477 U.S. at 181 (internal punctuation and citation omitted). "To constitute a due process

11  violation, the prosecutorial misconduct must be 'of sufficient significance to result in the denial

12  of the defendant's right to a fair trial.'" *Greer v. Miller*, 483 U.S. 756, 765 (1987) (quoting

13  *United States v. Bagley*, 473 U.S. 667, 676 (1985) and *United States v. Agurs*, 427 U.S. 97, 108

14  (1976)).

15      The Supreme Court of Nevada could have reasonably concluded that the alleged

16  prosecutorial misconduct described in Guy's state-court habeas petition came nowhere near this

17  standard, that Guy's trial counsel was not ineffective for not objecting, and that Guy was not

18  prejudiced. I deny habeas corpus relief on this part of Claim 2F14.

19

20

---

21  [11] The parties discuss a portion of the Supreme Court of Nevada's order affirming denial of

22  Guy's first state habeas petition, in which the court determined that part of the prosecution's closing argument *in the penalty phase of the trial* was not improper. ECF No. 53-9 at 27–28).

23  However, as that part of the order concerned only prosecution argument in the penalty phase, it has no bearing on the issue here. *See* ECF No. 160 at 58–59 (respondents' argument, in their answer); ECF No. 164 at 63 (Guy's argument, in his reply).

Guy does not show that he asserted any of the remainder of Claim 2F14 in his first state habeas action. *See* ECF No. 49-14 at 8–19. Therefore, the rest of Claim 2F14 is procedurally defaulted. *See* discussion *supra*, pp. 17–22. Guy makes no showing to overcome the procedural default. I therefore deny the remainder of Claim 2F14 as procedurally defaulted.

Claim 4C is Guy's substantive claim that the prosecution committed misconduct in closing argument in the guilt phase of his trial. ECF No. 90 at 176–80. This claim, too, is procedurally defaulted (*see* discussion *supra*, pp. 17–22), and Guy makes no showing to overcome the procedural default. I deny Claim 4C as procedurally defaulted.

### 18.   Claim 3G

In Claim 3G, Guy asserts that the trial court erred in improperly instructing the jury on flight (Instruction No. 25). ECF No. 90 at 141–45. The instruction at issue was as follows:

> The flight of a person after the commission of a crime is not sufficient in itself to establish his guilt of the crimes charged, but is a fact which, if proved, may be considered by you in the light of all the other proven facts in deciding the question of his guilt or innocence. Whether or not evidence of flight shows a consciousness of guilt of the crimes charged, and the significance to be attached to such a circumstance, are matters for your determination.

Instruction No. 25, ECF No. 2-11 at 55. In opening statements, the prosecutor stated:

> There came a time when Curtis Guy became a suspect in this case. During surveillance and attempt to arrest him Detective Ed Brown and other members of the North Las Vegas Police Department spotted the tan vehicle with tinted windows, exactly as the witnesses had described, and they observed Curtis Guy get into the car. They went to pull him over and eventually, after a high speed chase, they were able to finally arrest him.

ECF No. 147-1 at 9–10. Detective Edward Brown testified, consistently with the prosecutor's opening statement, that Guy was arrested on April 21, 1990 after a car chase, during which Guy exceeded speed limits and drove through several stop signs and a red traffic light. ECF No. 147-2

at 99–111. At a conference regarding jury instructions, Guy's trial counsel objected to the court giving the instruction on flight, but the judge ruled: "I'll let you put those in and argue them." ECF No. 148-1 at 11. In closing argument, the prosecutor mentioned that the jury was to determine "what the events were" when Guy was arrested:

> And you decide as best you can what the events were on April 7, 1990 and April 21, 1990—I think it was when Guy was arrested—and May 1st, 1990, the day that he gave his statement. Those are the three days that really impact you as fact finders. You and no one else has the right to decide precisely what the facts were.

ECF No. 148-1 at 24. Then, in rebuttal argument, the prosecutor attempted to present further argument regarding Guy's flight, but the court sustained Guy's trial counsel's objection and precluded the argument on the ground that it exceeded the scope of Guy's closing argument. ECF No. 148-2 at 45–47.

On Guy's direct appeal, he challenged the flight instruction, and the Supreme Court of Nevada ruled as follows:

> We agree that the trial court erred in giving the flight instruction. The purported "flight" occurred some thirteen days after Evans was killed and did not involve leaving the scene of the murder. Given appellant's criminal proclivities, there are numerous possibilities as to why he fled from the police on April 20, 1990. It is speculative to assert he fled because of a consciousness of guilt and fear of arrest arising out of the killing of Evans. *See Theriault v. State*, 92 Nev. 185, 547 P.2d 668 (1976). It is equally plausible that he fled to avoid being caught with illicit drugs in his possession. Although we find error here, we conclude that because of the overwhelming evidence of appellant's guilt, the error is harmless beyond a reasonable doubt. *See Manning v. Warden*, 99 Nev. 82, 659 P.2d 847 (1983).

*Guy*, 839 P.2d at 583. The court did not discuss what is in this case Guy's Claim 3G, his claim that the flight instruction violated his federal constitutional rights. Rather, the court appears to have denied relief on the federal constitutional claim without discussion.

To obtain federal habeas relief for an erroneous jury instruction, a petitioner must show that the improper instruction so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). In view of the overwhelming evidence that Guy and Pendleton were committing a robbery when Evans was killed, rendering Guy guilty of first-degree felony murder, and given the nature of the instruction at issue, a fairminded jurist could find that the flight instruction did not violate Guy's federal constitutional right to due process of law. *See Harrington*, 562 U.S. at 101. For the same reasons, a fairminded jurist could agree with the Supreme Court of Nevada's ruling that, at any rate, any error in giving the flight instruction was harmless. *See Davis v. Ayala*, 576 U.S. 257, 267–70 (2015). The court's denial of relief on what is here Claim 3G was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, and it was not based on an unreasonable determination of the facts in light of the evidence presented. I deny relief on Claim 3G.

### 19.    Claim 8

In Claim 8, Guy asserts that his federal constitutional rights were violated as a result of ineffective assistance of his appellate counsel, because his appellate counsel did not assert on appeal the claims contained in Claims 1, 3, 5, 7, 9 and 10. ECF No. 90 at 200–03.

Claim 8 is procedurally defaulted. *See* ECF No. 53-9 at 28 (Supreme Court of Nevada stated, on the appeal in Guy's first state habeas action: "Guy raises numerous claims of ineffective assistance of appellate counsel in connection with the claims of ineffective assistance of trial counsel discussed above. However, none of these claims were presented to the district court. Because Guy's claims of ineffective assistance of appellate counsel are not properly before

this court, they need not be considered."); *see also* discussion *supra*, pp. 17–22. Guy makes no showing to overcome the procedural default. I deny Claim 8 as procedurally defaulted.

### 20. Claims 9A and 9B

In Claim 9A, Guy asserts that, because Nevada judges are elected, they cannot provide a fair trial before a fair tribunal as the Due Process Clause of the federal constitution requires. ECF No. 90 at 203–06. In Claim 9B, Guy asserts that his conviction was upheld on appeal by a justice on the Supreme Court of Nevada who had a conflict. *Id.* at 206–09.

Claims 9A and 9B are procedurally defaulted. *See* discussion *supra*, pp. 17–22. Guy makes no showing to overcome the procedural default. I deny Claims 9A and 9B as procedurally defaulted.

### 21. Claims 2F12, 3K, 4E and 10

In Claim 2F12, Guy claims that he was prejudiced by the cumulative effect of improper jury instructions, the absence of appropriate jury instructions and verdict forms, and improper arguments by the prosecution. ECF No. 90 at 116–17. In Claim 3K, Guy asserts that he was prejudiced by the cumulative effect of improper jury instructions given in the guilt-phase of his trial. *Id.* at 156–58. In Claim 4E, Guy asserts that he was prejudiced by the cumulative effect of prosecutorial misconduct. *Id.* at 185. In Claim 10, Guy asserts that his conviction is invalid under federal constitution because of the cumulative effect of the errors described in all his claims. *Id.* at 209–11. These claims fail because Guy does not show any such constitutional error requiring cumulative consideration. I deny relief on Claims 2F12, 3K, 4E and 10.

### E. Certificate of Appealability

For a Certificate of Appealability (COA) to issue, a habeas petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). And where the

district court denies a habeas claim on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000). Applying these standards, I find that a certificate of appealability is not warranted.

## IV.    ORDERS

I THEREFORE ORDER that the petitioner's Second Amended Petition for Writ of Habeas Corpus **(ECF No. 90) is DENIED**.

I FURTHER ORDER that the petitioner is denied a certificate of appealability.

I FURTHER ORDER the Clerk of the Court to enter judgment accordingly and close this case.

I FURTHER ORDER that, under Federal Rule of Civil Procedure 25(d), John Henley is substituted for William Gittere as the respondent warden. The Clerk of the Court is directed to update the docket to reflect this change.

Dated: September 30, 2024.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE